IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
June 21, 2016 Session

## C. WESLEY FOWLER AS ADMINISTRATOR AD LITEM OF THE ESTATE OF FRANK JACKSON v. CITY OF MEMPHIS, ET AL.

**Appeal from the Circuit Court for Shelby County**
**No. CT00159113     Robert Samual Weiss, Judge**
_____

**No. W2015-01637-COA-R3-CV – Filed August 11, 2016**
_____

In this premises liability case, the plaintiff appeals from the trial court's grant of summary judgment to a governmental defendant. We affirm in part, vacate in part, and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part; Vacated in Part; and Remanded**

J. STEVEN STAFFORD, P.J.,W.S., delivered the opinion of the court, in which W. NEAL MCBRAYER and KENNY ARMSTRONG, JJ., joined.

C. Wesley Fowler and Jonathan O. Richardson, Memphis, Tennessee, for the appellant, C. Wesley Fowler as Administrator Ad Litem of the Estate of Frank Jackson.

Lang Wiseman and Will Patterson, Memphis, Tennessee, for the appellee, Memphis Light, Gas, and Water.

Dale H. Tuttle, Memphis, Tennessee, for the appellee, City of Memphis.

## OPINION

### Background

On April 10, 2013, Plaintiff Frank K. Jackson filed a complaint against Defendants/Appellants City of Memphis ("the City") and Memphis Light, Gas, and Water ("MLGW," together with the City, "Defendants"). The complaint alleged that Mr. Jackson had been injured when he fell into an uncovered water meter in the sidewalk. According to the complaint the uncovered water meter was a dangerous condition of which the Appellees had actual and constructive notice. The complaint sought $500,000.00 in damages.

Defendants filed separate answers to the complaint, both invoking governmental immunity pursuant to Tennessee Code Annotated Section 29-20-101, *et seq.* Specifically, Defendants' answers denied that they had either actual or constructive notice of the dangerous condition at issue. Defendants also raised the affirmative defense of comparative fault.

On February 3, 2014, MLGW filed a motion for summary judgment and supporting memorandum. Therein, MLGW argued that it was undisputed that MLGW "had no notice that the water meter box cover had been tampered with or that a dangerous condition existed at the location of his fall." On the same day, MLGW also filed a statement of undisputed material facts in support of its motion. In its statement of undisputed facts, MLGW asserted that the water meter at issue was "taken out of service" in 2007. At that time, it appears that a cover was placed over the water meter. MLGW further asserted that it only learned of the missing water meter cover after the accident had occurred, which assertion MLGW supported with an affidavit of an MLGW claims adjuster. In addition, MLGW asserted that Mr. Jackson had lived on the street where the accident occurred for decades, had walked by the water meter cover "as part of his daily routine," but "had never seen the subject water meter cover missing."

Mr. Jackson filed a response to MLGW's statement of undisputed facts on May 9, 2014. Relevant to this appeal, Mr. Jackson asserted that while he could neither confirm nor deny whether MLGW had actual notice of the missing water meter cover at the location of Mr. Jackson's fall, "it is undisputed that MLGW was on notice that its water meter covers are routinely stolen in Memphis and that theft of these covers is 'becoming more common,' as admitted by [an] MLGW employee . . . ." Mr. Jackson did not dispute that Mr. Jackson regularly walked by the subject water meter and never saw its cover missing previously.

On May 28, 2014, Mr. Jackson filed a supplemental statement of undisputed material facts, containing the following assertions:

> 1. MLGW installed the water meter box at issue on August 11, 1988.
>
> 2. MLGW maintained the water meter box at issue until June 26, 2006.
>
> 3. MLGW made not one single inspection of the subject water meter from November 20, 2007 until April 15, 2012 (almost 5 years), the day of [Mr. Jackson's] injury.
>
> 4. MLGW internal policy is for retired meter boxes to remain "locked."

5. It is both common sense and law in Tennessee that a safety lock that does not lock, or that can be accessed by someone with only a finger, is defective by its very nature.

6. MLGW is aware that the locking mechanism on its water meter covers may be unlocked by using only a finger.

7. Locking mechanisms on MLGW water meter covers may be overridden by any individual.

8. MLGW is aware that theft of water meter covers is becoming more common.

9. MLGW is aware that water meter covers may be stolen for the scrap metal value.

\* \* \*

11. MLGW does not employ a sidewalk inspector who looks for uncovered water meters in the sidewalk.

MLGW filed a response to Mr. Jackson's supplemental statement of undisputed facts, arguing that even if taking all of the facts therein as true, there is no evidence that MLGW had any actual or constructive notice that the cover was missing from this particular water meter. MLGW, however, did not specifically dispute any of the factual allegations contained in Mr. Jackson's supplemental statement of undisputed facts.

On January 28, 2015, Mr. Jackson filed an amended complaint to add a party for purposes of comparative fault. MLGW filed an answer to the amended complaint on February 3, 2015. On March 20, 2015, Mr. Jackson filed a second amended complaint. On April 28, 2015, a suggestion of death was filed on behalf of Mr. Jackson. The suggestion of death indicated that Mr. Jackson had died and that Plaintiff/Appellant C. Wesley Fowler ("Appellant") as administrator ad litem for the Estate of Frank Jackson should be substituted as plaintiff. On May 1, 2015, the parties entered an agreed order allowing the substitution.

Eventually, on August 21, 2015, the trial court entered an order granting MLGW's motion for summary judgment. Specifically, the trial court reasoned that MLGW did not cause or create the dangerous condition at issue. The trial court further found that MLGW did not have actual or constructive notice of the dangerous condition because "there was no proof suggesting that the condition existed for such a length of time that MLGW, in the exercise of reasonable care, should have become aware of it." Finally, the trial court concluded that there was no proof of a common occurrence or general continuing condition in connection with the specific water meter cover at issue. The trial court designated its order as final pursuant to

Rule 54.02 of the Tennessee Rules of Civil Procedure.[1] Appellant filed a timely notice of appeal.

## Issue Presented

Appellant raises a single issue in this appeal, which we restate here: Whether the trial court erred in granting MLGW's motion for summary judgment, concluding that MLGW had no actual or constructive notice of the dangerous condition that caused Mr. Jackson's injury.

## Standard of Review

Summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion and (2) the moving party is entitled to judgment as a matter of law on the undisputed facts. Tenn. R. Civ. P. 56.04. In cases where the moving party does not bear the burden of proof at trial, the movant may obtain summary judgment if it:

> (1) Submits affirmative evidence that negates an essential element of the nonmoving party's claim; or

> (2) Demonstrates to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

Tenn. Code Ann. § 20-16-101 (applying to cases filed after July 1, 2011); *see also* ***Rye v. Women's Care Ctr. of Memphis, MPLLC***, 477 S.W.3d 235, 264 (judicially adopting a summary judgment parallel to the statutory version contained in Tenn. Code Ann. § 20-16-101). When the moving party has made a properly supported motion, the burden of production shifts to the nonmoving party to show that a genuine issue of material fact exists. ***Id.*** at 257; *see* ***Robinson v. Omer***, 952 S.W.2d 423, 426 (Tenn. 1997); ***Byrd v. Hall***, 847 S.W.2d 208, 215–16 (Tenn. 1993). The nonmoving party may not simply rest upon the pleadings but must offer proof by affidavits or other discovery materials to show that there is a genuine issue for trial. Tenn. R. Civ. P. 56.06. If the nonmoving party "does not so respond, summary judgment, if appropriate, shall be entered." Tenn. R. Civ. P. 56.06.

On appeal, this Court reviews a trial court's grant of summary judgment *de novo* with no presumption of correctness. *See* ***City of Tullahoma v. Bedford Cnty.***, 938 S.W.2d 408, 412 (Tenn. 1997). In reviewing the trial court's decision, we must view all of the evidence in the light most favorable to the nonmoving party and resolve all factual inferences in the nonmoving party's favor. ***Luther v. Compton***, 5 S.W.3d 635, 639 (Tenn. 1999); ***Muhlheim v. Knox. Cnty. Bd. of Educ.***, 2 S.W.3d 927, 929 (Tenn. 1999). If the undisputed facts support

---

[1] The trial court's order granting summary judgment pertains only to MLGW. Accordingly, the City is not a party to this appeal. The City, however, chose to file an appellate brief in this matter despite the fact that it is not a proper party.

only one conclusion, then the court's summary judgment will be upheld because the moving party was entitled to judgment as a matter of law. *See White v. Lawrence*, 975 S.W.2d 525, 529 (Tenn. 1998); *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995).

## Discussion

There is no dispute in this case that MLGW enjoys governmental immunity from liability pursuant to the Tennessee Governmental Tort Liability Act ("GTLA"), Tennessee Code Annotated Section 29-20-101 *et seq.* Tennessee Code Annotated Section 29-20-203(a), provides, however, that: "Immunity from suit of a governmental entity is removed for any injury caused by a defective, unsafe, or dangerous condition of any street, alley, sidewalk or highway, owned and controlled by such governmental entity." Tennessee Code Annotated Section 29-20-204(a) also provides: "Immunity from suit of a governmental entity is removed for any injury caused by the dangerous or defective condition of any public building, structure, dam, reservoir or other public improvement owned and controlled by such governmental entity." The removal of immunity only applies under either statute, however, where "constructive and/or actual notice to the governmental entity of such condition be alleged and proved[.]"Tenn. Code Ann. §§ 29-20-203(b), 204(b); *see also Kirby v. Macon Cnty.*, 892 S.W.2d 403, 406 (Tenn. 1994) (holding that more than one immunity exception can be applicable in a given circumstance).[2] This Court has previously held that "[t]he section of the GTLA which removes sovereign immunity for injuries caused by dangerous or defective structures essentially codifies [the] common-law" rule that:

> To sustain a claim for premises liability, a plaintiff must prove (1) that the dangerous or defective condition was caused or created by the owner, operator, or his agent, or (2) that the condition was created by a third party and the owner, operator, or agent had actual or constructive notice of the condition before the accident.

*Brown v. Chester Cnty. Sch. Dist.*, No. W2008-00035-COA-R3-CV, 2008 WL 5397532, at *2 (Tenn. Ct. App. Dec. 30, 2008) (citing *Martin v. Washmaster Auto Ctr.*, 946 S.W.2d 314, 318 (Tenn. Ct. App. 1996)). In this case, MLGW argues that Appellant has failed to show, at the summary judgment stage, that it created the dangerous condition or had either actual or constructive notice of the dangerous condition at issue so as to remove governmental immunity.

---

[2] Appellant relies on Tennessee Code Annotated Section 29-20-203 in his brief. MLGW relies on Tennessee Code Annotated Section 29-20-204 in its brief. Because both statutes require actual or constructive notice of a dangerous or defective condition, the dispute is not material to this appeal.

The Tennessee Supreme Court has described actual notice as "knowledge of facts and circumstances sufficiently pertinent in character to enable reasonably cautious and prudent persons to investigate and ascertain as to the ultimate facts." *Kirby*, 892 S.W.2d at 409 (quoting *Texas Co. v. Aycock*, 190 Tenn. 16, 227 S.W.2d 41, 46 (Tenn. 1950)). Constructive notice, in contrast, is defined as "information or knowledge of a fact imputed by law to a person (although he may not actually have it) because he could have discovered the fact by proper diligence, and his situation was such as to cast upon him the duty of inquiring into it." *Parker v. Holiday Hosp. Franchising, Inc.*, 446 S.W.3d 341, 351–52 (Tenn. 2014) (quoting *Hawks v. City of Westmoreland*, 960 S.W.2d 10, 15 (Tenn. 1997)). Constructive notice may be established by showing that a dangerous or defective condition existed for such a length of time that a property owner, in the exercise of reasonable care, should have become aware of it. *Parker*, 446 S.W.3d at 352 (citing *Simmons v. Sears, Roebuck & Co.*, 713 S.W.2d 640, 641 (Tenn. 1986)). Constructive notice may also be established by showing that the dangerous condition resulted from "'a pattern of conduct, a recurring incident, or a general or continuing condition.'" *Parker*, 446 S.W.3d at 352 (quoting *Blair*, 130 S.W.3d at 765).

Here, the parties cannot agree on what dangerous condition is even at issue in this case. Appellant asserts that the dangerous condition that led to Mr. Jackson's injury was the faulty meter box covers placed by MLGW throughout the City that were allegedly easily removed by third parties. According to Appellant, MLGW was negligent in its decision to utilize unsecure covers for water meter boxes, placing the easily-tampered-with covers on the meter boxes, and then failing to remedy the dangerous condition created thereby once it learned that the covers were being removed by third parties. In contrast, MLGW argues that the only dangerous condition at issue is the hole created by the missing cover on the water meter that actually injured Mr. Jackson. Because Appellant cannot prove MLGW had any knowledge, actual or constructive, that the particular water meter at issue was missing a cover, MLGW argues that summary judgment was appropriate. We will consider each characterization in term.

When considering Appellant's claim through the lens of a dangerous or defective condition under Tennessee Code Annotated Sections 29-20-203 and -204, it is clear that MLGW is entitled to summary judgment. As an initial matter, we note that the GTLA "requires notice of the actual defective or dangerous condition alleged to have caused the loss." *Champlin v. Metro. Gov't Of Nashville*, No. M2007-02158-COA-R3-CV, 2009 WL 1065937, at *5 (Tenn. Ct. App. Apr. 20, 2009). As such, for this claim we consider only the notice given to MLGW regarding the dangerous condition of the particular water meter at issue. *See Kirby v. Macon Cty.*, 892 S.W.2d 403, 410 (Tenn. 1994) (considering only the notice to the county regarding the "particular bridge" at issue); *Mosley v. McCanless*, 207 S.W.3d 247, 253 (Tenn. Ct. App. 2006) (framing the issue as "[w]hether a *particular* site is defective, unsafe, or dangerous for purposes of waiving governmental immunity") (emphasis added) (quoting *Helton v. Knox County, TN*, 922 S.W.2d 877, 882 (Tenn. 1996) (affirming dismissal of action because bridge was not "defective, unsafe, or dangerous condition,"

rather than on the issue of notice)); *Champlin*, 2009 WL 1065937, at *5 (holding that a prior sidewalk inventory: (1) noting that many sidewalks did not comply with federal law did not constitute constructive notice that any sidewalk was dangerous or defective; and (2) noting cracks in the particular sidewalk at issue did "not provide notice of a dangerous, defective or unsafe condition"); *Denton v. Hahn*, No. M2003-00342-COA-R3-CV, 2004 WL 2083711, at *12 (Tenn. Ct. App. Sept. 16, 2004) (holding that a home owners association had no actual or constructive notice of a dangerous condition allegedly caused by settling on a particular piece of property, despite general knowledge that settling had occurred in buildings throughout the complex); *Smith v. Castner-Knott Dry Goods Co.*, No. 01A01-9512-CV-00554, 1997 WL 203605, at *2 (Tenn. Ct. App. Apr. 25, 1997) ("[T]he store personnel were not on constructive notice of the condition of these tiles even though they were aware that other types of mirrored tiles had become dislodged in other locations . . . .").

First, there is no evidence presented by Appellant that any agent of MLGW removed the cover from the water meter that injured Mr. Jackson, creating the dangerous condition at issue. Appellant argues, however, that MLGW created the dangerous condition when it installed the easily-tampered-with water meter covers. "Tennessee courts recognize that a [governmental entity] might have constructive notice of a defect where it built the structure" at issue. *Halliburton v. Town of Halls*, 295 S.W.3d 636, 641 (Tenn. Ct. App. 2008). We cannot agree, however, that this claim is appropriate to show a defective or dangerous condition created by MLGW. A similar claim was raised in *Kirby v. Macon County*, 892 S.W.2d 403 (Tenn. 1994), where the plaintiff was injured in a car accident on a bridge where guard rails were missing. The plaintiff raised two causes of action: (1) that the city was negligent in its decision not to install metal guard rails, which could not be removed;[3] and (2) that the city "failed to adequately maintain the wooden wheel guards on the bridge, thereby causing a defective, unsafe, and dangerous condition." *Id.* at 407 & 409. In support of the second claim, the plaintiff presented evidence that it was "common for parts of the wheel guards to be missing" and introduced a report indicating that the bridge was in "poor" or "critical" condition. *Id.* at 404. The Court of Appeals concluded, however, that the plaintiff failed to prove actual or constructive notice sufficient to remove immunity, despite the plaintiff's other claim that the city chose to install guardrails that could be easily removed. *Id.* at 410. Although the Tennessee Supreme Court did not specifically discuss whether the county had "created" the dangerous condition at issue with regard to the plaintiff's defective or dangerous condition claim, it is clear by their holding that the simple fact that third-parties were able to remove a safety device installed by the county did not constitute the required notice sufficient to remove GTLA liability. The same is true in this case. Here, the water meter cover at issue was installed by MLGW, but undisputedly removed by a third-party. The fact that MLGW installed water meter covers that proved to be easily-tampered-with by third-parties, much like in *Kirby*, is simply not sufficient to remove immunity under Tennessee Code Annotated Sections 29-20-203 and -204. Instead, this type of "design defect

---

[3] This claim is discussed in detail, *infra*.

- 7 -

claim" falls more squarely within Tennessee Code Annotated Section 29-20-205, as discussed in detail, *infra*.

There is also no evidence in the record that MLGW was ever made aware that the cover on this water meter was missing. *See Parker v. Holiday Hosp. Franchising, Inc.*, 446 S.W.3d 341, 352 (Tenn. 2014) (noting that the property owner had never received any complaints regarding the allegedly defective condition in concluding that actual or constructive notice had not been proven); *Champlin v. Metro. Gov't Of Nashville*, No. M2007-02158-COA-R3-CV, 2009 WL 1065937, at \*3 (Tenn. Ct. App. Apr. 20, 2009) (concluding there was no constructive notice where there were "no requests for repair, complaints or calls regarding the sidewalk where [the plaintiff] fell prior to her accident"). Furthermore, there is no evidence that the water meter at issue was uncovered for such a long period of time as to put MLGW on notice of its dangerous condition. *Parker*, 446 S.W.3d at 352 (considering the "length of time" the dangerous condition existed to determine constructive notice). From our review of the record, there is simply no evidence as to how long the cover was missing from which the trial court could have made such a finding. A lack of evidence on this issue is often fatal to a claim of constructive notice. In fact, this Court has previously held that "[a]s a general rule, constructive knowledge cannot be established without some showing of the length of time the dangerous condition had existed." *Hardesty v. Serv. Merch. Co.*, 953 S.W.2d 678, 682 (Tenn. Ct. App. 1997) (citing *Jones v. Zayre, Inc.*, 600 S.W.2d 730, 732 (Tenn. Ct. App. 1980)).

Finally, we cannot conclude that the cover of this particular water meter being missing constitutes a common occurrence sufficient to put MLGW on notice. "[I]n order to find constructive notice under the common occurrence theory, the plaintiff must show that the dangerous condition occurred in 'the same approximate location and in such a frequent manner, that the happening of the condition was foreseeable by the defendants.'" *Merrell v. City of Memphis*, No. W2013-00948-COA-R3CV, 2014 WL 173411, at \*7 (Tenn. Ct. App. Jan. 16, 2014*), perm. app. denied* ( Tenn. July 14, 2014) (quoting *Nolley v. Eichel*, No. M2006-00879-COA-R3-CV, 2007 WL 980603, at \*4 (Tenn. Ct. App. April 2, 2007)). Here, Appellant did not dispute that Mr. Jackson walked by the water meter "daily" and never before noticed that the cover was missing. There is also no evidence of other covers being removed near the cover at issue in this case. Thus, Appellant failed to present specific evidence that the cover of this particular water meter or others in the same "approximate location" were being removed in "such a frequent fashion" as to qualify as a common occurrence. Because there was no evidence in the record to support either actual or constructive notice to MLGW of the allegedly dangerous condition of this particular water meter, the trial court did not err in granting MLGW's motion for summary judgment for any claim arising from a defective or dangerous condition.[4]

---

[4] Our holding is equally applicable to any claim that a dangerous or defective condition was allowed by MLGW predicated on a theory of negligence per se due to Memphis Ordinance violations. When a claim is

Considering Appellant's characterization of the claim at issue in this case, however, is a more difficult question. Here, Appellant argues that MLGW essentially created the dangerous situation at issue through a series of faulty decisions: (1) the decision to install the water meter hole in the middle of a sidewalk, despite an ordinance that requires water meters be placed in grassy areas where available;[5] (2) the decision to use a water meter cover that can easily be tampered with,[6] despite an ordinance that requires holes in sidewalks be securely covered;[7] and (3) the decision not to regularly inspect the water meters, despite

governed by the GTLA, the applicable provisions of the GTLA must be strictly construed and complied with in order for immunity to be removed. *See* **Halliburton v. Town of Halls**, 295 S.W.3d 636, 639 (Tenn. Ct. App. 2008) "Immunity may only be removed, however, where there is "strict compliance" with the terms of the Governmental Tort Liability Act."). As such, any claim of negligence per se under Tennessee Code Annotated Section 29-20-203 or -204 is not excused from the GTLA requirement that MLGW have actual or constructive notice of the defective condition.

[5] Specifically, Memphis City Ordinance 12-24-19 provides: "Whenever possible, meter boxes, cut-off-valves and like instruments shall be placed in the grass plot between the sidewalk and curb, but where no grass plot exists, such meter boxes, cut-off valves and other like instrumentalities shall be placed adjacent to the curb." MLGW contends that the above ordinance does not establish liability, as there is no evidence in the record that the water meter box was placed in an already existing sidewalk, or if the sidewalk was instead installed around an already existing water meter.

[6] In its brief, MLGW disputes that the water meter covers were easily tampered with, resulting in frequent thefts. In the trial court, however, Mr. Jackson, filed his own statement of undisputed facts alleging that:

> 7. Locking mechanisms on MLGW water meter covers may be overridden by any individual.
> 8. MLGW is aware that theft of water meter covers is becoming more common.
> 9. MLGW is aware that water meter covers may be stolen for the scrap metal value.

(internal citations omitted) (citing the deposition testimony of an MLGW employee). MLGW did not specifically deny any of these allegations. Accordingly, we take them as true for purposes of summary judgment. *See* **Coleman v. Lauderdale Cnty.**, No. W2011-00602-COA-R3-CV, 2012 WL 475606, at \*4 (Tenn. Ct. App. Feb. 15, 2012) (recognizing that when a party fails to respond to an opposing party's statement of undisputed material facts, those facts may be deemed admitted for purposes of summary judgment) (citing **Waters v. Tenn. Dep't of Corr.**, No. M2002-00917-COA-R3-CV, 2003 WL 21713421, at \*4 (Tenn. Ct. App. July 24, 2003)).

[7] Specifically, Memphis City Ordinance 12-24-14 provides, in pertinent part:

> Every opening in the paved sidewalk leading into an area or vault beneath the surface of such sidewalk, or into a cellar or basement, shall be fitted with an iron grating or roughened metal cover, flush with the surface

knowledge that the covers are easily removed and in fact, have been removed in many instances throughout the City. Because MLGW purportedly created the hole in which the water meters are located and failed to adequately remediate the danger presented by the hole by installing a cover that could not be easily tampered with, Appellant argues that the notice requirement to remove governmental immunity has been met in this case.

Rather than a defective or dangerous condition claim under Tennessee Code Annotated Sections 29-20-203 or -204, this claim is more closely akin to the claim raised in ***Davis by Davis v. City of Cleveland***, 709 S.W.2d 613 (Tenn. Ct. App. 1986). In ***Davis***, the plaintiff's claim alleged that the city was negligent in installing a traffic light with a yellow light "at too short an interval for traffic to clear the intersection." ***Id.*** at 615. While the parties had treated the case as a defective condition case under Tennessee Code Annotated Section 29-20-203, the Court of Appeals concluded that the case was properly considered instead under Tennessee Code Annotated Section "29-20-205, dealing with removal of immunity for injury caused by the negligent act or omission of governmental employees." ***Id.*** As the court explained: "It is clear . . . that the complaint is directed at negligent acts or omissions of employees of either the City of Cleveland or Bradley County, acting in the course and scope of their employment, rather than upon a defective condition of the traffic signal light." ***Id.*** Accordingly, the Court of Appeals considered whether summary judgment was appropriate under Tennessee Code Annotated Section 29-20-205. ***Id.***

In this case, Appellant claims that MLGW negligently chose to place a water meter hole in the center of the subject sidewalk and cover the hole with an easily tampered-with cover. This claim clearly involves allegations that MLGW employees were negligent in their decision to install the water meter holes with easily-tampered-with covers in the first instance. Under these circumstances, it appears that, analogously to ***Davis***, Appellant's claim "is directed at negligent acts or omissions" by MLGW employees that created an allegedly dangerous situation. Indeed, Appellant's own brief frames the issue in this case as involving "the design of the metal cover" placed over water meter holes in the City. Tennessee courts have previously characterized claims involving decisions or designs that allegedly resulted in dangerous conditions as falling with the ambit of Tennessee Code Annotated Section 29-20-205. *See* ***Helton v. Knox Cnty., Tenn.***, 922 S.W.2d 877, 885 (Tenn. 1996) (considering a decision not to install guardrails under Section 29-20-205). ***Zamek v. O'Donnell***, No. W2006-00522-COA-R3-CV, 2007 WL 98481, at *6 (Tenn. Ct. App. Jan. 16, 2007) (applying Section 29-20-205 to a claim that the county's decision not to close a road was negligent); ***Rucker v. Metro. Gov't of Nashville & Davidson Cty.***, No. 89-165-II, 1990 WL 182275, at

of the walk and securely bolted, riveted or welded so as to remain in place.

MLGW argues that this ordinance is not applicable because a water meter cover is not specifically mentioned, unlike in other statutes. MLGW also contends that the above ordinance does not apply because the water meter hole does not "lead[]" into an area, vault, cellar, or basement.

*8 (Tenn. Ct. App. Nov. 28, 1990) (applying Section 29-20-205 to a claim that a storm drainage system was defectively designed and did not meet the city's own standards).

Indeed, as previously discussed, a substantially similar claim was raised in *Kirby*, wherein the plaintiff alleged that the county was negligent in failing to install metal guardrails along a bridge rather than wooden guardrails, as the current wooden guardrails were easily damaged and frequently displaced. *Kirby*, 892 S.W.2d at 406. The Tennessee Supreme Court considered this claim through the lens of Tennessee Code Annotated Section 29-20-205. *Id.* at 407. Appellant raises a largely analogous claim in this case: that MLGW was negligent in failing to install more secure covers on water meters, rather than the covers at issue that proved to be easily removed. As such, like the *Davis* and *Kirby* Courts, we will consider this claim under Tennessee Code Annotated Section 29-20-205. *See Zamek*, 2007 WL 98481, at *3 ("When a party relies on a particular section of the [GTLA] as the basis for a lawsuit, the courts are not bound by the party's designation. . . . If the facts of the case and the essence of the complaint make another section of the Act applicable, the court may analyze the case under that other section in addition to, or instead of, the original section relied upon by the parties.") (citing *Helton*, 922 S.W.2d at 880).

Tennessee Code Annotated Section 29-20-205 provides, in relevant part:

> Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury arises out of:
>
> (1) The exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused;
>
> * * *
>
> (4) A failure to make an inspection, or by reason of making an inadequate or negligent inspection of any property; . . . .

Based upon the plain language of the statute, governmental entities are not immune from suit for injury caused by the negligence of their employees, except where the action of the employee involved the exercise of a "discretionary function" or the failure to make an inspection. Under those circumstances, the governmental entity retains governmental immunity and no liability may attach.

MLGW argues in this appeal that Appellant's claim cannot stand because it involves both a discretionary function and a failure to inspect. Appellant concedes in his reply brief that he "is not bringing a negligent failure to inspect claim," presumably because such a

- 11 -

claim would be barred by governmental immunity. As such, we will only consider whether Appellant's claim is barred by the discretionary function doctrine.

In ***Bowers by Bowers v. City of Chattanooga***, 826 S.W.2d 427 (Tenn. 1992), the Tennessee Supreme Court first adopted the "planning-operational" framework for determining whether the act of a governmental employee was a discretionary function. Under the planning-operational test, courts are to distinguish governmental acts that are performed at the "planning" level from those performed at the "operational" level, explaining:

> [D]ecisions that rise to the level of planning or policy-making are considered discretionary acts which do not give rise to tort liability, while decisions that are merely operational are not considered discretionary acts and, therefore, do not give rise to immunity.

*Id.* at 430. Rather than focus on "the identity of the decision maker," the ***Bowers*** Court held that "[t]he distinction between planning and operational depends on the type of decision" involved. *Id.* at 430–31 (citing ***Carlson v. State***, 598 P.2d 969, 972 (Alaska 1979)). The Tennessee Supreme Court therefore directed courts to consider "(1) the decision-making process and (2) the propriety of judicial review of the resulting decision." ***Bowers***, 826 S.W.2d at 431.

The ***Bowers*** Court offered further guidance as to the type of decisions that would constitute either a planning decision or an operational decision:

> If a particular course of conduct is determined after consideration or debate by an individual or group charged with the formulation of plans or policies, it strongly suggests the result is a planning decision. These decisions often result from assessing priorities; allocating resources; developing policies; or establishing plans, specifications, or schedules. . . .
>
> On the other hand, a decision resulting from a determination based on preexisting laws, regulations, policies, or standards, usually indicates that its maker is performing an operational act. Similarly operational are those ad hoc decisions made by an individual or group not charged with the development of plans or policies. These operational acts, which often implement prior planning decisions, are not "discretionary functions" within the meaning of the [GTLA].

*Id.* (citing ***Peavler v. Bd. of Comm'rs***, 528 N.E.2d 40, 46 (Ind. 1988)).

Appellant first argues that MLGW waived the discretionary function defense by failing to raise it "at the trial level." Generally, arguments that are raised for the first time on appeal are waived. *See e.g.*, *City of Memphis v. Shelby Cnty.*, 469 S.W.3d 531 (Tenn. Ct. App. 2015), *perm. app. denied* (Tenn. Aug. 14, 2015) (concluding that an argument was waived by raising it for the first time on appeal) (citing *Lawrence v. Stanford*, 655 S.W.2d 927, 929 (Tenn. 1983)). In this case, however, we cannot agree that MLGW failed to present this argument in the trial court.

Here, MLGW contends that Appellant's claims have "subtly evolved over time," and we cannot necessarily disagree. As previously discussed, at times in this appeal and in the trial court, it appeared that Appellant was raising claims of a dangerous or defective condition under Tennessee Code Annotated Sections 29-20-203 and -204, while at other times Appellant appeared to be making a negligent design/decision claim under Tennessee Code Annotated Section 29-20-205. In response to what it apparently considered a shift in Appellant's theory, on August 11, 2014, MLGW filed a pleading specifically raising the argument that a "design-related claim[]" involved a discretionary function for which immunity would not be removed. Moreover, only a few days later on August 18, 2014, Appellant responded directly to MLGW's argument by asserting that his claim did not involve a discretionary function. As such, the parties clearly raised and argued this issue in the trial court and waiver is simply not applicable. Appellant's assertion that MLGW did not raise this defense at the trial level borders on being disingenuous.

Appellant next argues that even if the discretionary function doctrine is available, it does not apply in this case because "MLGW's negligent placement of this meter and failure to secure the meter are not discretionary functions." As previously discussed, the question of whether a decision is a discretionary function involves the type of decision that was made and whether it constituted a planning decision or an operational decision. This inquiry is necessarily fact-intensive. In fact, at least one Tennessee Court has described the question of whether an action by a governmental agency was properly characterized as planning or operational as a question of fact for which findings of fact are necessary. *See Green v. Hamblen Cnty. Bd. of Educ.*, No. 03A01-9903-CV-00084, 1999 WL 907560, at \*6 (Tenn. Ct. App. Oct. 18, 1999). Here, the trial court's order does not appear to address Appellant's argument that MLGW's choice of covers for water meters and their placement was negligent.[8] Rule 56.04 of the Tennessee Rules of Civil Procedure makes clear that "[t]he trial court shall state the legal grounds upon which the court denies or grants" a motion for summary judgment. The Tennessee Supreme Court has interpreted this language as requiring

---

[8] We note, as point of edification, that the trial court's ruling cites *Barkley v. Shelby Cty. Bd. of Educ.*, No. W2014-00417-COA-R3-CV, 2015 WL 1275415, at \*1 (Tenn. Ct. App. Mar. 18, 2015). MLGW also cites this case in its appellate brief. The *Barkley* Opinion, however, is designated as a Memorandum Opinion and specifically states that it "shall not be cited or relied on for any reason in any unrelated case." *Id.* at \*1 n.1 (citing Tenn. R. Ct. App. 10). As such, neither the trial court, appellate courts, nor litigants are entitled to cite or rely upon the language in *Barkley* or other similarly designated Opinions.

trial courts to "fashion[] a considered, independent ruling based on the evidence, the filings, argument of counsel, and applicable legal principles." ***Smith v. UHS of Lakeside, Inc.***, 439 S.W.3d 303, 315 (Tenn. 2014) (citing John J. Brunetti, S*earching for Methods of Trial Court Fact–Finding and Decision-Making*, 49 Hastings L.J. 1491, 1502 (1998)). Under these circumstances, we conclude that the appropriate remedy is to vacate the trial court's judgment in so far as it dismissed any claim under Tennessee Code Annotated Section 29-20-205 regarding the allegedly negligent design and installation of MLGW water meter covers and remand to the trial court for further consideration in accordance with Rule 56.04.

## Conclusion

The trial court's decision to grant summary judgment as to Appellant's claims under Tennessee Code Annotated Sections 29-20-203 and -204 is affirmed. Summary judgment is vacated, however, as to Appellant's claim under Tennessee Code Annotated Section 29-20-205, and this cause is remanded for further consideration, including whether MLGW's decision to install the water meter covers at issue constitutes a discretionary function. Costs of this appeal are taxed one-half to Appellant C. Wesley Fowler, as administrator ad litem for the estate of Frank Jackson, and his surety, and one-half to Appellee, Memphis Light, Gas, and Water, for all of which execution may issue if necessary.


_____
J. STEVEN STAFFORD, JUDGE