IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 10, 2021 Session

TONY W. CARRICK ET AL. v. CITY OF SHELBYVILLE, TENNESSEE

Appeal from the Circuit Court for Bedford County
No. 2018-CV-13396      M. Wyatt Burk, Judge

———————————————————

No. M2020-01218-COA-R3-CV

———————————————————

Following a single-vehicle accident on a road owned and controlled by the City of Shelbyville (the "City"), Tony Carrick and his wife, Linda Carrick (together, "Plaintiffs"), filed suit against the City alleging damages for personal injury, injury to property, and loss of consortium. The City moved for summary judgment on the basis that it retained its immunity under the Governmental Tort Liability Act ("GTLA") because it had no actual or constructive notice of a defective, unsafe, or dangerous condition on the road where the accident occurred. The trial court agreed with the City and granted its motion for summary judgment. Having reviewed the record, we conclude that genuine issues of material fact exist regarding whether the City had actual or constructive notice of the condition at issue. We reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court for Bedford County Reversed; Case Remanded**

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which KENNY W. ARMSTRONG and ARNOLD B. GOLDIN, JJ., joined.

Jason L. Huskey, Manchester, Tennessee, for the appellants, Tony Wesley Carrick and Linda Carrick.

William C. Mazzota, Brentwood, Tennessee, for the appellee, City of Shelbyville.

**OPINION**

**I. BACKGROUND**

This is a GTLA case arising from a motor vehicle accident that occurred on Harts

Chapel Road in Shelbyville, Tennessee. On the afternoon of August 30, 2017, Mr. Carrick wrecked his vehicle when a culvert directly underneath the asphalt on Harts Chapel Road gave way and the asphalt crumbled. According to Mr. Carrick, his vehicle became lodged in the resultant hole.

Plaintiffs filed an action in the Circuit Court for Bedford County (the "trial court") on August 28, 2018, alleging that the City[1] was responsible for Mr. Carrick's bodily injuries and property damage. Mrs. Carrick alleged loss of consortium. Plaintiffs averred that the City's governmental immunity was removed by virtue of Tennessee Code Annotated section 29-20-203.[2]

The City responded by denying that its GTLA immunity was removed, stating that it was not on notice of any alleged defective, unsafe, or dangerous conditions at the site of the accident on Harts Chapel Road. Some discovery ensued, and it was revealed that on the day before the accident, August 29, 2017, the culvert in question had been inspected by Grady Frazier, the superintendent of street drainage for the City's public works department. It is undisputed that the City inspected the culvert due to a recent flooding incident. After that inspection, Mr. Frazier submitted a work order for the culvert in question to be replaced. This work order provided that work would begin on September 1, 2017, and that the "dig area will be through the road as we will replace the culvert."

The City filed a motion for summary judgment on April 27, 2020, arguing that it retained its immunity pursuant to the GTLA because Plaintiffs could not prove the City had actual or constructive notice of a defective, unsafe, or dangerous condition where the accident occurred. The City argued that the hole was created by Mr. Carrick's truck at the time of the accident and that the City therefore could not have had prior notice of the hole. The City further averred that "there is no fact in the record to support a claim that anyone contacted the City about any issues pertaining to the [c]ulvert or the [r]oad where the [h]ole formed before the accident. Neither the County's then-Superintendent nor Deputy-Superintendent recall informing the City of any issues pertaining to Mr. Carrick's allegations." Additionally, the City urged that the inspection done by Mr. Frazier the day before the accident was insufficient to create a question of fact regarding notice because the inspection had to do with the culvert itself as opposed to the road constructed on top of the culvert.

In support of its motion, the City submitted, *inter alia*, an affidavit by Mr. Frazier. Mr. Frazier conceded that he inspected the culvert on August 29, 2017, and determined

---

[1] Bedford County was originally named as a defendant but was later dismissed from the action by agreement of the parties. Bedford County is not participating in the present appeal.

[2] Plaintiffs' complaint actually states that the City's immunity is removed pursuant to T.C.A. § 29-22-03; however, this appears to be a typo.

that it needed replacing. Mr. Frazier maintained, however, that while the culvert needed replacing, he did not conclude from his inspection that the culvert posed "any threat to the stability or integrity of the [r]oad." The City provided additional affidavits from several employees maintaining that they received no previous complaints or reports regarding damage to the relevant portion of Harts Chapel Road and that the hole created by Mr. Carrick's truck was the first indication of any damage.

Plaintiffs responded to the motion for summary judgment on June 17, 2020. Plaintiffs averred that a genuine issue of material fact existed as to whether the City had notice regarding the condition of the culvert, explaining that "[t]he City clearly received some form of notice to check on the condition of the culvert prompting their inspection on August 29, 2017 and discovering that the culvert was in need of repair." Plaintiffs also took issue with the City's averment that it had no reports or complaints regarding the portion of the road in question; Plaintiffs pointed to the August 29, 2017 work order, which was contained in the record, and urged that "clearly there is some form of notice or reporting that prompted the inspection." Plaintiffs also disputed Mr. Frazier's statement that he did not believe, on August 29, 2017, that the integrity of the road was threatened by the culvert, again pointing to the work order and noting that "[t]here was enough concern from inspecting it that [the City] wrote a work order to replace the culvert dated that same day." Stated simply, Plaintiffs' position at the summary judgment stage was that the August 29, 2017 work order was sufficient, standing alone, to create a genuine issue of material fact regarding whether the City had actual or constructive notice of a defective, unsafe, or dangerous condition as to both the culvert and the road.

The trial court held a hearing on the City's motion on June 25, 2020, and entered an order granting the motion for summary judgment on August 5, 2020. The trial court found, as pertinent:

2. Plaintiffs have not sufficiently disputed any of the City's material facts.

3. Specifically, it is undisputed that the City did not have actual or constructive notice of the alleged dangerous, unsafe, or defective condition that caused Mr. Carrick's alleged accident and, thus, the Plaintiffs have failed to create a genuine issue of this material fact.

4. Mr. Frazier's testimony that the [c]ulvert did not pose a threat to the stability or integrity of the [r]oad coupled with the work order attached as Exhibit A to his declaration is insufficient to constitute actual or constructive notice of a dangerous or defective condition along the [r]oad.

5. The fact that the City determined that the [c]ulvert needed to be

- 3 -

replaced does not warrant a conclusion that the City had notice that the [c]ulvert was a dangerous, unsafe, or defective condition that caused Mr. Carrick's alleged accident. No such affidavit or proof otherwise has been submitted by the Plaintiffs for the Court's consideration.

Plaintiffs' case was dismissed in its entirety, and they filed a timely appeal to this Court.

## II. ISSUES

Plaintiffs raise a single issue on appeal:

1. Whether the trial court erred in granting the City's motion for summary judgment.

The City raises one additional issue in its posture as appellee:

2. Whether this appeal is frivolous such that the City should be awarded its attorney's fees pursuant to Tennessee Code Annotated section 27-1-122.

## III. STANDARD OF REVIEW

A trial court may grant summary judgment only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. The propriety of a trial court's summary judgment decision presents a question of law, which we review de novo with no presumption of correctness. *Kershaw v. Levy*, 583 S.W.3d 544, 547 (Tenn. 2019).

"The moving party has the ultimate burden of persuading the court that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." *Martin v. Norfolk S. Ry.*, 271 S.W.3d 76, 83 (Tenn. 2008). As our Supreme Court has instructed,

> when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense.

*Rye v. Women's Care Ctr. of Memphis*, 477 S.W.3d 235, 264 (Tenn. 2015) (emphasis in original). "[I]f the moving party bears the burden of proof on the challenged claim at trial, that party must produce at the summary judgment stage evidence that, if uncontroverted at

trial, would entitle it to a directed verdict." *TWB Architects, Inc. v. Braxton, LLC*, 578 S.W.3d 879, 888 (Tenn. 2019) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 331, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986)).

When a party files and properly supports a motion for summary judgment as provided in Rule 56, "to survive summary judgment, the nonmoving party may not rest upon the mere allegations or denials of its pleading, but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, set forth specific facts . . . showing that there is a genuine issue for trial." *Rye*, 477 S.W.3d at 265 (internal quotation marks and brackets in original omitted). "Whether the nonmoving party is a plaintiff or a defendant—and whether or not the nonmoving party bears the burden of proof at trial on the challenged claim or defense—at the summary judgment stage, '[t]he nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party.'" *TWB Architects*, 578 S.W.3d at 889 (quoting *Rye*, 477 S.W.3d at 265).

In reviewing the trial court's summary judgment decision, we accept the evidence presented by the nonmoving party (in this case, Plaintiffs) as true; allow all reasonable inferences in their favor; and "resolve any doubts about the existence of a genuine issue of material fact in favor of" Plaintiffs, the party opposing summary judgment. *Id.* at 887.

## IV. DISCUSSION

The question in this case is whether the City retains the immunity afforded it pursuant to the GTLA. *See* Tenn. Code Ann. § 29-20-201 et seq.; *see also Brown v. Hamilton Cnty.*, 126 S.W.3d 43, 46 (Tenn. Ct. App. 2003) ("Local governmental entities are immune from suit except when the General Assembly has, by statute, explicitly permitted them to be sued." (citing *Fretwell v. Chaffin*, 652 S.W.2d 755, 756 (Tenn. 1983))). The dispute here arises from section 29-20-203, which removes governmental immunity "for any injury caused by a defective, unsafe, or dangerous condition of any street, alley, sidewalk or highway, owned and controlled by such governmental entity." Tenn. Code Ann. § 29-20-203(a). Removal of immunity under this section does not apply, however, unless "constructive and/or actual notice to the governmental entity of such condition be alleged and proved[.]" *Id.* § 29-20-203(b). Regarding section 29-20-203 and actual and constructive notice, we have previously explained:

> "[T]he section of the GTLA which removes sovereign immunity for injuries caused by dangerous or defective structures essentially codifies [the] common-law" rule that:
>
> To sustain a claim for premises liability, a plaintiff must prove (1) that the dangerous or defective condition was caused or created by

the owner, operator, or his agent, or (2) that the condition was created by a third party and the owner, operator, or agent had actual or constructive notice of the condition before the accident.

*Brown v. Chester Cnty. Sch. Dist.*, No. W2008-00035-COA-R3-CV, 2008 WL 5397532, at *2 (Tenn. Ct. App. Dec. 30, 2008) (citing *Martin v. Washmaster Auto Ctr.*, 946 S.W.2d 314, 318 (Tenn. Ct. App. 1996)).

\*     \*     \*

The Tennessee Supreme Court has described actual notice as "knowledge of facts and circumstances sufficiently pertinent in character to enable reasonably cautious and prudent persons to investigate and ascertain as to the ultimate facts." *Kirby* [*v. Macon Cnty.*, 892 S.W.2d 403, 409 (Tenn. 1994)], (quoting *Texas Co. v. Aycock*, 190 Tenn. 16, 227 S.W.2d 41, 46 (Tenn. 1950)). Constructive notice, in contrast, is defined as "information or knowledge of a fact imputed by law to a person (although he may not actually have it) because he could have discovered the fact by proper diligence, and his situation was such as to cast upon him the duty of inquiring into it." *Parker v. Holiday Hosp. Franchising, Inc.*, 446 S.W.3d 341, 351–52 (Tenn. 2014) (quoting *Hawks v. City of Westmoreland*, 960 S.W.2d 10, 15 (Tenn. 1997)). Constructive notice may be established by showing that a dangerous or defective condition existed for such a length of time that a property owner, in the exercise of reasonable care, should have become aware of it. *Parker*, 446 S.W.3d at 352 (citing *Simmons v. Sears, Roebuck & Co.*, 713 S.W.2d 640, 641 (Tenn. 1986)). Constructive notice may also be established by showing that the dangerous condition resulted from "'a pattern of conduct, a recurring incident, or a general or continuing condition.'" *Parker*, 446 S.W.3d at 352 (quoting *Blair v. West Town Mall*, 130 S.W.3d 761, 765 (Tenn. 2004)).

*Fowler v. City of Memphis*, 514 S.W.3d 732, 737–38 (Tenn. Ct. App. 2016).

On appeal, Plaintiffs maintain that the August 29, 2017 work order creates a genuine issue of material fact regarding actual or constructive notice, inasmuch as the work order establishes that the culvert at issue was inspected one day prior to Mr. Carrick's accident and that the City determined it needed replacement. On the other hand, the City argues that notwithstanding the work order, Plaintiffs can point to no facts in the record supporting their contention that the City had notice of any defective, unsafe, or dangerous conditions affecting the road itself as opposed to the culvert. The City avers that Plaintiffs offered no affidavits or additional evidence of their own at the summary judgment stage to dispute Mr. Frazier's statement that he did not believe the integrity of the road was threatened by

the culvert as of August 29, 2017, and that as such, this fact is undisputed. Plaintiffs counter that taken together, the work order and the fact that the culvert and the road collapsed on August 30, 2017, create a genuine issue of material fact as to actual and/or constructive notice, and that Plaintiffs need not have provided anything further to survive summary judgment.

We agree with Plaintiffs. Although the City correctly notes that Plaintiffs did not file any opposing affidavits in response to the City's motion for summary judgment, Rule 56 does not necessarily demand this. Rather, when responding to a motion for summary judgment, "[t]he nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party." *Bowers v. Estate of Mounger*, 542 S.W.3d 470, 478 (Tenn. Ct. App. 2017) (quoting *Rye*, 477 S.W.3d at 265). In responding to the City's motion, Plaintiffs cited to the work order, which is contained in the record, to dispute the City's contention that as of August 30, 2017, the City lacked actual or constructive notice of a threat to the structural integrity of the road above the culvert. The work order provides that the culvert would be replaced on September 1, 2017, and that the "dig area will be through the road as we will replace the culvert." Consequently, based on the work order itself, a reasonable trier of fact could conclude that the City had actual or constructive notice[3] that the culvert and/or the road atop the culvert were unsafe, dangerous, or defective.

On appeal, the City relies heavily on the affidavit of Mr. Frazier, which provides that despite entering the work order on August 29, 2017 for replacement of the culvert, he did not believe at that time that the integrity of the road atop the culvert was threatened. The City argues that because Plaintiffs did not provide their own additional evidence in response to the affidavit, Mr. Frazier's position is undisputed. As we have already explained, however, Plaintiffs cited to the work order in the record to challenge Mr. Frazier's statement; additionally, Plaintiffs argue on appeal that while Mr. Frazier claims to have believed the road was sound as of his inspection on August 29, 2017, the undisputed fact that the road crumbled directly above the culvert the next day creates an issue as to whether Mr. Frazier's belief was unreasonable. Here, we find ourselves aligned with Plaintiffs. *See Fowler*, 514 S.W.3d 738 ("[A]ctual notice [is] 'knowledge of facts and

---

[3] The City urges on appeal that Plaintiffs have waived any argument regarding constructive notice by failing to appropriately raise it in the trial court. This argument is unsupported by the record. While we agree that Plaintiffs have, to some extent, conflated the notions of actual and constructive notice, the issue of constructive notice is not waived because it was inartfully raised. *See First Cmty. Bank, N.A. v. First Tennessee Bank, N.A.*, 489 S.W.3d 369, 401 (Tenn. 2015) ("[D]etermining whether parties have waived their right to raise an issue on appeal should not exalt form over substance ... [a]ppellate courts must carefully review the record to determine whether a party is actually raising an issue for the first time on appeal." (quoting *Powell v. Cmty. Health Sys.*, 312 S.W.3d 496, 511 (Tenn. 2010))). Further, the doctrine of waiver generally prevents parties from raising arguments to which their opponents have been unable to respond. *See Jackson v. Burrell*, 602 S.W.3d 340, 345 (Tenn. 2020). Here, the City has had the opportunity to address the issue of both actual and constructive notice at multiple points.

circumstances sufficiently pertinent in character to enable reasonably cautious and prudent persons to investigate and ascertain as to the ultimate facts.'" (quoting *Kirby*, 892 S.W.2d at 409)); *McMahan v. City of Cleveland*, No. E2018-01719-COA-R3-CV, 2019 WL 5067193, at *3 (Tenn. Ct. App. Oct. 9, 2019) ("If the contention is one of actual notice, the operative questions are what did the [c]ity know and when did the [c]ity know it. . . . If the contention is one of constructive notice, the operative questions are what should the [c]ity have known and when should the [c]ity have known it.") (citations omitted); *see also TWB Architects*, 578 S.W.3d at 892 ("[S]ummary judgment 'is seldom appropriate in cases wherein particular states of mind are decisive as elements of [a] claim or defense[.]'" (quoting *HCA, Inc. v. Am. Prot. Ins. Co.*, 174 S.W.3d 184, 193 (Tenn. Ct. App. 2005))).

In that vein, we are unpersuaded by the City's averment that nothing in the record connects the structural integrity of the culvert with that of the road; again, the work order raises a question here, insofar as the contents of the order suggest that the "dig area" to replace the culvert will have to go "through the road." At the very least, this raises a genuine issue of material fact as to whether the City, through Mr. Frazier, should have known that the structural integrity of the culvert affected the safety of the road above it.

Finally, the City avers that this case is analogous to *McMahan v. City of Cleveland*, 2019 WL 5067193, a contention with which we disagree. In that case, the plaintiff tripped on an uneven portion of sidewalk owned by the City of Cleveland. *Id.* at *1. She brought suit against the city alleging, *inter alia*, that the city had actual or constructive notice of the condition on the sidewalk and that the city's immunity was removed by section 29-20-203. *Id.* The case proceeded to a bench trial, and the trial court found that the plaintiff failed to show the city had either actual or constructive notice of any defective, unsafe, or dangerous condition. *Id.* at *2.

On appeal, the plaintiff first argued that "the City had notice because the roots of the trees it planted along the sidewalks in the 1990s caused some of the sidewalks in the downtown area to be raised or cracked and uneven." *Id.* at *4. "Stated another way, [p]laintiff assert[ed] that the act of planting the trees combined with the location of the hazardous condition [was] enough to impute notice and remove immunity." *Id.* We rejected this argument, however, because "[p]laintiff produced no evidence that the raised or cracked and uneven defect in the sidewalk where she tripped and fell was caused by the growth of a tree root." *Id.* The plaintiff further argued a common occurrence theory, urging that "the City had constructive notice of the defect where she tripped and fell because the defective condition occurs often enough throughout the City that the City was put on constructive notice of its existence." *Id.* at *5. Again, however, we noted that the plaintiff introduced no evidence to support this theory. *Id.* Importantly, we explained that the director of public works for Cleveland testified that "no one had identified or observed a potential hazard in the sidewalk where [p]laintiff tripped and fell during any of the sweeps, and there had been no complaints by anyone of any kind pertaining to the section of

sidewalk where [p]laintiff tripped and fell." The plaintiff did not rebut this testimony, and we upheld the trial court's decision in favor of the city. *Id.*

We do not find *McMahan* applicable under these circumstances. First, *McMahan* does not deal with summary judgment as we do here; this is significant because at this stage in the proceedings, we are simply ascertaining whether the case should be allowed to proceed to trial based on what is contained in the record. Second, in *McMahan*, the City of Cleveland put on proof that "no one had identified or observed a potential hazard" at the site of the plaintiff's fall, whereas here, it is undisputed that the City not only inspected the site of Mr. Carrick's accident but also determined that a prompt replacement of the culvert was necessary. Accordingly, *McMahan* does not control here.

The evidence before us could cause a rational trier of fact to conclude that the City had either actual or constructive notice of a defective, unsafe, or dangerous condition at the site of Mr. Carrick's accident. Inasmuch as we must allow all reasonable inferences and resolve any doubts about the existence of a genuine issue of material fact in Plaintiffs' favor, *TWB Architects*, 578 S.W.3d at 887 (quoting *Rye*, 477 S.W.3d at 265), we conclude that genuine issues of material fact exist regarding whether the City had actual or constructive notice of a defective, unsafe, or dangerous condition. We therefore reverse the trial court's decision granting the City summary judgment on all of Plaintiffs' claims.

Because Plaintiffs have prevailed in this appeal, we decline to award the City attorney's fees pursuant to Tennessee Code Annotated section 27-1-122.

## V. CONCLUSION

The judgment of the Circuit Court for Bedford County is hereby reversed, and the case remanded for proceedings consistent with this opinion. Costs of this appeal are assessed to the appellee, the City of Shelbyville, for which execution may issue if necessary.

_____
KRISTI M. DAVIS, JUDGE