IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 17, 2022 Session

## RUTH MITCHELL v. CITY OF FRANKLIN, TENNESSEE

Appeal from the Circuit Court for Williamson County
No. 2019-152     Joseph A. Woodruff, Judge
_____

### No. M2021-00877-COA-R3-CV
_____

This appeal is an action subject to the Tennessee Governmental Tort Liability Act, in which a pedestrian suffered injuries after she tripped and fell on a sidewalk in Franklin, Tennessee. The pedestrian filed a complaint claiming that the city was negligent. After a bench trial, the trial court entered judgment in favor of the city and dismissed the case. The pedestrian appeals. We affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Vacated in Part, and Remanded**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

James Bryan Moseley, Murfreesboro, Tennessee, for the appellant, Ruth Mitchell.

B. Duane Willis, Jr., Nashville, Tennessee, for the appellee, City of Franklin, Tennessee.

## OPINION

### I.     FACTS & PROCEDURAL HISTORY

On June 3, 2018, Ruth Mitchell attended a church service at Franklin First United Methodist Church's ("the Church") historic sanctuary in the City of Franklin ("the City"). After the service, Ms. Mitchell was walking to her vehicle when she tripped and fell on a concrete sidewalk. She allegedly "encountered an abrupt change of elevation caused by a raised portion of the sidewalk which caught the toe of her shoe causing her to fall." She later described this particular change in elevation as a "cuff" in the sidewalk that "kept

[her] from moving forward." She was attended to by several individuals after the fall and then transported by ambulance to the hospital. As a result of the fall, she "shattered" her left elbow and sustained abrasions on her hands and knees.

After Ms. Mitchell's fall, Ms. Margaret Martin, the alderman for the fourth ward of the City, contacted the City's human resources department to report the incident for insurance purposes.[1] According to Ms. Martin, it was at this time when she first learned of the City's complaint-driven policy regarding sidewalks. She explained in her testimony that she had been unaware that the City had a policy where citizens would have to complain and notify the City about the conditions of the sidewalks in order for them to be repaired. The City's risk management department then filed a claim report with its insurance company concerning Ms. Mitchell's fall, in which it stated, "Woman was attending church . . . , coming down the stairs and turned right, [and] tripped on the sidewalk where it has buckled." The sidewalk was then inspected by City employees and was remediated by grinding down the change in elevation. The change in elevation was not measured at any time prior to Ms. Mitchell's fall or prior to the remediation of the sidewalk by the City. Despite this remediation, the City had no written record, documentation, incident report, log, or work order related to the sidewalk other than the claim report filed with its insurance company.

In March 2019, Ms. Mitchell filed a complaint claiming negligence against the City. She claimed that the City owed her the following duties: a duty to maintain its property in a safe condition; a duty to inspect its property to discover unsafe conditions; a duty to take corrective measures to remove or repair unsafe conditions which could be remedied; and a duty to warn of conditions which could not, as a practical matter, be removed or repaired. She claimed that the City breached those duties and that the damages and injuries she suffered were actually and proximately caused by the City's breach. Additionally, she claimed that her injuries were caused by a dangerous and/or defective condition of the sidewalk owned and controlled by the City, and therefore the City's governmental immunity was removed under the Tennessee Governmental Tort Liability Act ("GTLA") pursuant to Tennessee Code Annotated sections 29-20-203, 29-20-204, and 29-20-205. The City filed its answer to the complaint in May 2019. The City asserted several affirmative defenses, including that it was entitled to the defenses available under the GTLA.

Ms. Mitchell employed Mr. David Johnson, who would later testify as her expert witness in the field of human factors engineering, to perform an inspection of the sidewalk in question, and he issued his report on the matter in July 2020.[2] Despite the remediation

---

[1] Ms. Mitchell's daughter, Kristie Lee Jones, also called the City's risk management department to report the condition of the sidewalk.

[2] Mr. David Johnson was an industrial engineer with a specialization in human factors engineering. He explained that the field of human factors engineering was designed to maximize safety, health, comfort, and efficiency using knowledge of human limitations, capabilities, expectations, dimensions, physiology,

of the sidewalk that had occurred, he attempted to measure the area of sidewalk that had been ground down and obtain an estimate of the change in elevation that had allegedly caused Ms. Mitchell's fall. He used a four-foot measuring stick to determine how much material had been removed. He later explained that he examined the discoloration in the sidewalk where the area that had been ground down was lighter-colored concrete compared to the darker concrete that had not been disturbed. He applied pressure on the straight edge at this point to the area that had not been disturbed, and he was able to obtain an estimated change in elevation using this method. He stated that this method—extending a planar surface to determine an estimated change in elevation—was just basic geometry. However, it was a method he and other engineers used in order to obtain such an estimate. He stated that his measurement revealed that the change in elevation was approximately an inch or slightly over. According to his testimony, however, the change in elevation was greater than a quarter-inch but not greater than an inch, just based on the method of remediation performed by the City.

The City filed a motion for summary judgment in November 2020. In its memorandum of law supporting the motion, the City contended that Ms. Mitchell could not prove the existence of a duty and that it was entitled to immunity under the GTLA, specifically Tennessee Code Annotated sections 29-20-203 and 29-20-205. Ms. Mitchell filed a motion for partial summary judgment contending that immunity was removed under the GTLA and that the City was liable for the harm caused to her. Both parties then filed responses and replies to the respective motions. In February 2021, the trial court entered an order granting in part and denying in part the City's motion for summary judgment and denying Ms. Mitchell's motion for partial summary judgment. The court began by addressing the City's motion for summary judgment. First, the court found that the City did not meet its initial burden of demonstrating that it was entitled to summary judgment on the question of whether there was a duty. At the time, the court could not find that Ms. Mitchell could not prove the existence of any duty owed to her by the City. Rather, the court found that Ms. Mitchell should be required to prove the existence of a duty at trial by a preponderance of the evidence. Therefore, the court denied the City's motion for summary judgment with respect to the existence of a duty. Second, the court found that genuine disputes remained concerning actual and constructive notice. Therefore, the court denied the City's motion for summary judgment with respect to the applicability of section 29-20-203. Third, the court found that the City satisfied its burden of demonstrating that it was entitled to judgment as a matter of law regarding the applicability of section 29-20-205(1) and (4), i.e., the discretionary function and failure to inspect exceptions. The court stated that Ms. Mitchell did not come forward with any material facts demonstrating the existence of a genuine dispute remaining on these issues. Therefore, the court granted the

movement, and psychology. Particularly, he had experience involving forensic work pertaining to sidewalks and other types of walkways and had investigated the causes of pedestrian falls. Hereinafter, we refer to Mr. David Johnson as the "human factors engineer" because there was another witness with the same surname.

City's motion for summary judgment with respect to the applicability of section 29-20-205(1) and (4), finding that Ms. Mitchell could not proceed on a theory of removal of immunity under section 29-20-205 due to the discretionary function and failure to inspect exceptions. The court then addressed Ms. Mitchell's motion for partial summary judgment and reiterated its findings regarding sections 29-20-203 and 29-20-205. The court found that she failed to demonstrate that she was entitled to summary judgment on the applicability of sections 29-20-203 or 29-20-205. Therefore, the court denied her motion for partial summary judgment with respect to the issue of liability. In sum, the court held that section 29-20-205(1) and (4) applied to preserve the City's immunity, but the City's immunity could still be removed under section 29-20-203.

In May 2021, the City filed a motion in limine to exclude the testimony of the human factors engineer. Ms. Mitchell filed a response in opposition to the motion. The trial court entered an order denying in part and granting in part the City's motion. The court found that an exemplar photograph depicting an allegedly similarly elevated sidewalk, the testimony of the human factors engineer based upon that photograph, and the opinion testimony of the human factors engineer regarding the City's sidewalk maintenance standards should be excluded from trial. Specifically, the court found that the testimony of the human factors engineer was "not relevant" because "the exceptions to removal of [the City's] governmental immunity in negligence actions codified at Tenn. Code Ann. § 29-20-205(1) and (4) apply to preserve [the City's] immunity[.]" However, the court found that the remaining testimony of the human factors engineer should not be excluded from trial, subject to its ruling on any additional evidentiary objections made during the course of the trial. The court then held trial in June 2021. There were 13 witnesses that testified over the course of the two-day trial.

According to testimony of the human factors engineer, a quarter-inch threshold was significant because it was the point at which a sidewalk's change in elevation would be considered a "trip hazard." He testified that if the change in elevation exceeds a quarter-inch, it is considered a trip hazard and also exceeds the minimum foot clearance during a stride. He based his opinion not only upon national safety standards, but also upon the accessibility code adopted by the City.[3] Therefore, he testified that the change in elevation became "dangerous" at this point. He concluded that the sidewalk in question was "unsafe and unreasonably dangerous" because "[t]here was an abrupt vertical change in elevation

---

[3] In his report, the human factors engineer referenced the following: (1) the City's "Transportation & Street Technical Standards, 2017 Edition"; (2) the "Tennessee Department of Transportation (TDOT) Roadway Design Guidelines Section 9-Multimodal Design Chapter 3 TDOT Accessibility Guidelines"; (3) the "International Code Council (ICC)/ANSI A117.1-2017-American National Standard Accessible and Usable Buildings and Facilities standard"; and (4) the "American Standards for Testing and Materials (ASTM) F 1637-2013 Standard Practice for Safe Walking Surfaces." He testified that the City has adopted the ANSI A117.1 standard. This standard allows a vertical change in elevation up to a quarter-inch to remain untreated. If the change in elevation is between a quarter-inch and a half-inch, it must be beveled. If the change in elevation is greater than a half-inch, it must be transitioned by means of a ramp.

- 4 -

. . . that did not conform to national consensus safety standards for sidewalks and also did not comply with accessibility code, nor property maintenance code." Mr. Doug Pratt, the City's road inspector, agreed that if the change in elevation was above a quarter-inch, it would be a potential trip hazard.

In July 2021, the trial court entered an order for judgment in favor of the City and dismissed Ms. Mitchell's claims. The court found that Ms. Mitchell failed to carry her burden of proof to show by a preponderance of the evidence that the City had either actual or constructive notice of the defect in the sidewalk where she was injured. Therefore, the court held that the City's immunity was not removed by the GTLA and that the City was entitled to judgment in its favor. Additionally, the court held that the issue of comparative fault was pretermitted based on its determination that the City was immune from liability. Thereafter, Ms. Mitchell timely filed her appeal.

After the filing of her notice of appeal, Ms. Mitchell filed a notice of filing the affidavit of the human factors engineer as an offer of proof. The affidavit detailed the offered proof of the human factors engineer concerning the City's maintenance and inspection policies and procedures of its sidewalks. The City filed a motion to quash the notice of filing. It argued that the affidavit was not proffered at trial, was new evidence, and must be excluded. In the alternative, it argued that certain paragraphs of the affidavit should be excluded as a matter of law, and the affidavit should be redacted accordingly. Ms. Mitchell then filed a response in opposition to the motion. She argued that at trial she attempted to make an offer of proof pursuant to Tennessee Rule of Evidence 103, the court indicated that an offer of proof could be made but it would be done outside the trial judge's presence. Counsel for Ms. Mitchell had suggested making the offer of proof via affidavit. At that time, the court agreed that this would be acceptable and indicated that the City could present whatever its cross-examination would be. The court stated that the offer of proof would be designated as Appellate Exhibit B: "It is my practice to identify matters that are part of the record, such as offers of proof and whatnot, by that designation; otherwise, they don't get included in the record on appeal." However, no such affidavit was filed during the remainder of the trial dates, after the trial concluded, or by the time the final order was entered three weeks later. Still, the court ultimately entered an order denying the motion to quash. The court stated that the proof was not before the court prior to its decision and was an issue being raised solely on appeal. The notice of filing and the affidavit were included in the record as a "late filed" Appellate Exhibit B.

## II. ISSUES PRESENTED

Ms. Mitchell presents the following issues for review on appeal, which we have slightly restated:

1. Whether the evidence preponderates against the trial court's finding that the City had no constructive notice of the unsafe condition of the sidewalk;

A. Whether the trial court erred in concluding that there was no support in the record for a finding that the vertical offset of the sidewalk had existed for such a sufficient length of time that constructive notice should be presumed;

B. Whether the trial court erred in finding that there was no evidence that an adjacent tree's roots caused the uplifting of the sidewalk; and

2. Whether the trial court erred in excluding evidence;

A. Whether the trial court erred in excluding the testimony of the human factors engineer regarding maintenance and inspection of the City's sidewalks;

B. Whether the trial court erred in excluding an exemplar photograph which depicted the same condition located in another section of the same sidewalk to demonstrate what the condition looked like before it was removed by the City;

3. Whether the trial court erred in finding that the human factors engineer was "Defendant's" expert witness who expressed an opinion that the condition of the sidewalk was a "patently obvious dangerous trip hazard."

The City presents the following issues for review on appeal, which we have slightly restated:

1. Whether the trial court's grant of partial summary judgment is pretermitted by not being raised by Ms. Mitchell;

2. Whether the evidence confirms the trial court's conclusion that the City did not have constructive notice of the condition of the sidewalk in question; and

3. Whether the totality of the evidence confirms the trial court's dismissal with prejudice.

For the following reasons, we affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.

### III. STANDARD OF REVIEW

This matter was decided by the trial court without a jury. Therefore, the trial court's findings of fact are reviewed *de novo* upon the record, accompanied by a presumption of correctness unless the preponderance of evidence is otherwise. Tenn. R. App. P. 13(d). "For the evidence to preponderate against a trial court's findings of fact, it must support another finding of fact with greater convincing effect." *Traylor ex rel. Traylor v. Shelby Cnty. Bd. of Educ.*, No. W2013-00836-COA-R3-CV, 2014 WL 7921131, at *7 (Tenn. Ct. App. Feb. 27, 2014) (citing *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *Realty Shop, Inc. v. RR Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999)). "A trial court's conclusions of law are reviewed *de novo*, with no presumption of correctness." *Id.* (citing *Nashville Ford Tractor, Inc. v. Great Am. Ins. Co.*, 194 S.W.3d 415, 425 (Tenn. Ct. App. 2005)).

### IV. DISCUSSION

As in most negligence actions against a government entity, the discussion must start with the GTLA. *See* Tenn. Code Ann. § 29-20-201, *et seq*. Pursuant to the GTLA, "[g]overnmental entities are immune from suit, except when immunity has been removed by statute." *McMahan v. City of Cleveland*, No. E2018-01719-COA-R3-CV, 2019 WL 5067193, at *3 (Tenn. Ct. App. Oct. 9, 2019); *see* Tenn. Code Ann. § 29-20-201. Therefore, "[b]efore proceeding in an action against a governmental entity, the threshold issue of waiver of governmental immunity must be addressed." *Id.* (quoting *Brown v. Hamilton Cnty.*, 126 S.W.3d 43, 46 (Tenn. Ct. App. 2003)). There are two specific statutes, Tennessee Code Annotated sections 29-20-203 and 29-20-205, which are pertinent to this case and provide for removal of immunity.[4]

### A. Section 29-20-205

We first address section 29-20-205, which removes immunity for injury caused by the negligence of a public officer or employee. *See* Tenn. Code Ann. § 29-20-205. A governmental entity remains immune from suit, however, if one of the enumerated exceptions in the statute apply. *See id.*; *Giggers v. Memphis Housing Auth.*, 363 S.W.3d 500, 507 (Tenn. 2012) (explaining that if the injury results from a discretionary act of the governmental entity, regardless of whether that discretion was abused, a governmental entity remains immune under section 29-20-205(1)); *see also Limbaugh v. Coffee Med. Ctr.*, 59 S.W.3d 73, 84-85 (Tenn. 2001). The statute provides in part:

> Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury arises out of:
>
> (1) The exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused; [or]
>
> . . .
>
> (4) A failure to make an inspection, or by reason of making an inadequate or negligent inspection of any property[.]

Tenn. Code Ann. § 29-20-205(1) and (4). In this case, the trial court granted the City's motion for summary judgment with respect to the applicability of section 29-20-205(1) and (4), finding that Ms. Mitchell could not proceed on a theory of removal of immunity under

---

[4] In addition to section 29-20-203, Ms. Mitchell also claimed that the City's immunity was removed pursuant to section 29-20-204. However, the trial court found that section 29-20-203 was controlling in this case. On appeal, Ms. Mitchell notes in her appellate brief that section 29-20-204 pertains to buildings and structures as opposed to streets and sidewalks. She does not make the argument that section 29-20-203 is not controlling in this case.

section 29-20-205 due to those exceptions.

At oral argument, counsel for Ms. Mitchell conceded that the issue of removal of immunity under section 29-20-205 was not raised on appeal. As such, we conclude that any issue of removal of immunity pursuant to section 29-20-205 is waived. We note, however, that "[t]he issue of immunity under each exception [of the GTLA] is a separate matter entirely." *Zamek v. O'Donnell*, No. W2006-00522-COA-R3-CV, 2007 WL 98481, at *3 (Tenn. Ct. App. Jan. 16, 2007) (citing *Helton v. Knox Cnty.*, 922 S.W.2d 877, 882 (Tenn. 1996)). "The application of one of the immunity exceptions does not necessarily preclude the application of another." *Id.* (citing *Kirby v. Macon Cnty.*, 892 S.W.2d 403, 406 (Tenn. 1994)). Liability for injuries under section 29-20-203 caused by a defective, unsafe, or dangerous condition is not subject to the exceptions of section 29-20-205. *Id.* (citing *Kirby*, 892 S.W.2d at 406). Despite the City's immunity under the failure to inspect exception of section 29-20-205(4), "[p]roof that a governmental entity failed to adequately inspect property or improvements which it owned and controlled is directly relevant to the question of whether it had constructive notice of the dangerous [or unsafe] or defective condition resulting in injury." *Hawks v. City of Westmoreland*, 960 S.W.2d 10, 16 (Tenn. 1997). Therefore, since Ms. Mitchell is seeking recovery from the City which owns and controls the sidewalk in question pursuant to section 29-20-203, section 29-20-205(4) does not provide immunity from suit arising from "an injury caused by a defective, unsafe, or dangerous condition" of that sidewalk if either actual or constructive notice is "alleged and proved." Tenn. Code Ann. § 29-20-203; *see Hawks*, 960 S.W.2d at 16 (applying the same rationale to demonstrate that section 29-20-205(4) does not provide immunity from suit arising from allegations pursuant to section 29-20-204). It follows then that the City's immunity may still be removed under section 29-20-203 even though it retained immunity under section 29-20-205.

### B. *Section 29-20-203*

Section 29-20-203 removes immunity for injury caused by government roadways and sidewalks under certain circumstances. *See* Tenn. Code Ann. § 29-20-203. The statute provides:

> (a) Immunity from suit of a governmental entity is removed for any injury caused by a defective, unsafe, or dangerous condition of any street, alley, sidewalk or highway, owned and controlled by such governmental entity. . . .
>
> (b) This section shall not apply unless constructive and/or actual notice to the governmental entity of such condition be alleged and proved in addition to the procedural notice required by § 29-20-302 [repealed].

*Id.* Regarding this section, the decisive issue is whether the City had actual or constructive

notice of the condition of the sidewalk in question.[5]  The statute clearly states that immunity will not be removed unless "actual and/or constructive notice" is "alleged and proved." Tenn. Code Ann. § 29-20-203(b).  With respect to notice, this Court has explained that "[i]f the contention is one of actual notice, the operative questions are what did the City know and when did the City know it."  *McMahan*, 2019 WL 5067193, at *3; *see Alexander v. City of Murfreesboro*, No. M2010-00367-COA-R3-CV, 2011 WL 882441, at *3 (Tenn. Ct. App. Mar. 14, 2011).  "If the contention is one of constructive notice, the operative questions are what should the City have known and when should the City have known it." *Id.*; *see Alexander*, 2011 WL 882441, at *3.

### i.     Constructive Notice

Ms. Mitchell does not challenge the trial court's ruling regarding actual notice.  She only challenges whether the evidence preponderates against the trial court's finding that that the City had no constructive notice of the unsafe condition of the sidewalk in question. Constructive notice is defined as "'information or knowledge of a fact imputed by law to a person (although he may not actually have it), because he could have discovered the fact by proper diligence, and his situation was such as to cast upon him the duty of inquiring into it.'"  *Kirby*, 892 S.W.2d at 409 (quoting *Black's Law Dictionary*, 1062 (6th ed. 1990)). "Applying that definition, a governmental entity will be charged with constructive notice of a fact or information, if the fact or information could have been discovered by reasonable diligence and the governmental entity had a duty to exercise reasonable diligence to inquire into the matter."  *Brown v. Chester Cnty. Sch. Dist.*, No. W2008-00035-COA-R3-CV, 2008 WL 5397532, at *3 (Tenn. Ct. App. Dec. 30, 2008) (quoting *Hawks*, 960 S.W.2d at 15). There are three ways that a plaintiff can establish constructive notice:

> First, a plaintiff may demonstrate that the owner or operator of the premises caused or created the condition.  *See Sanders v. State*, 783 S.W.2d 948, 951 (Tenn. Ct. App. 1989).  Second, . . . a plaintiff may prove constructive notice by evidence that the condition "existed for a length of time" that the owner/occupier "in the exercise of reasonable care, should have become aware of that condition."  *Elkins v. Hawkins County*, No. E2004-02184-COA-R3-CV, 2005 WL 1183150, at *4 (Tenn. Ct. App. May 19, 2005). [Third,] . . . a plaintiff may show constructive notice . . . by proving that "a pattern of conduct, recurring incident, or general continuing condition" caused the dangerous condition.  *Blair v. West Town Mall*, 130 S.W.3d 761, 765-66 (Tenn. 2004).

*Merrell v. City of Memphis*, No. W2013-00948-COA-R3-CV, 2014 WL 173411, at *5

---

[5] The parties do not present issues challenging whether the injury was "caused by a defective, unsafe, or dangerous condition" or whether City "owned and controlled" the sidewalk.  Tenn. Code Ann. § 29-20-203.

(Tenn. Ct. App. Jan. 16, 2014).  These three theories are sometimes referred to as the caused or created theory, the passage of time theory, and the common occurrence theory.[6]  *Benn v. Pub. Bldg. Auth. of Knox Cnty.*, No. E2009-01083-COA-R3-CV, 2010 WL 2593932, at *4 (Tenn. Ct. App. June 28, 2010).  Whether the City had constructive notice is a question of fact.  *Wright v. City of Lebanon*, No. M2010-00207-COA-R3-CV, 2011 WL 721508, at *6 (Tenn. Ct. App. Mar. 1, 2011); *see Petty v. City of White House*, No. M2008-02453-COA-R3-CV, 2009 WL 2767140, at *6 (Tenn. Ct. App. Aug. 31, 2009).

### a.  Passage of Time Theory

Ms. Mitchell's first argument regarding constructive notice is consistent with the passage of time theory.  *Traylor ex rel. Traylor*, 2014 WL 7921131, at *9 (quoting *Benn*, 2010 WL 2593932, at *4).  She argues that the trial court erred in concluding that there was no support in the record for a finding that the vertical offset of the sidewalk had existed for such a sufficient length of time that constructive notice should be presumed.  The City argues that the length of time of the condition of the sidewalk was not proven by any witnesses.

In order to prove constructive notice under the passage of time theory, Ms. Mitchell "must generally present some proof of how long the dangerous condition existed prior to the accident in question."  *Id.* at *10; *see Nolley v. Eichel*, No. M2006-00879-COA-R3-CV, 2007 WL 980603, at *2 (Tenn. Ct. App. Apr. 2, 2007) (discussing proof bearing on the length of time that the condition existed prior to the accident); *see also Broyles v. City of Knoxville*, No. 03A019505-CV-00166, 1995 WL 511904, at *5 (Tenn. Ct. App. Aug. 30, 1995) ("When liability is based upon constructive notice, there must be material evidence from which the . . . trier of fact could conclude that the dangerous or defective condition existed for sufficient time and under such circumstances that the defendant, exercising reasonable care and diligence, would have discovered the . . . condition.") (citing *Paradiso v. Kroger Co.*, 499 S.W.2d 78, 79 (Tenn. Ct. App. 1973)).  "As a general rule, constructive knowledge cannot be established without some showing of the length of time the dangerous condition had existed."  *Fowler v. City of Memphis*, 514 S.W.3d 732, 740 (Tenn. Ct. App. 2016) (quoting *Hardesty v. Serv. Merch. Co.*, 953 S.W.2d 678, 682 (Tenn. Ct. App. 1997) (citing *Jones v. Zayre, Inc.*, 600 S.W.2d 730, 732 (Tenn. Ct. App. 1980))).

There was conflicting testimony at trial regarding whether the condition of the sidewalk was reported to the City in November 2012, years before the accident in 2018.  Mr. Barry Johnson, the facility manager for the Church, testified that he noticed the poor condition of the sidewalks around the Church and reported the problems to the City.

---

[6] Part of Ms. Mitchell's argument is that the adjacent tree's roots caused the condition of the sidewalk.  However, her argument is not to be confused with the caused or created theory.  On appeal, she does not make an argument under the caused or created theory, i.e., whether the City caused or created the condition of the sidewalk.

However, rather than reporting the specific area of the sidewalk in question, he claims to have reported the entire block of sidewalks. Mr. Johnson kept a logbook of his work at the Church, which reflected that he reported the sidewalks to the City on November 29, 2012. He testified that he spoke with an individual he knew who worked for the City and was directed to speak with Mr. Brad Wilson, the facilities manager for the City. He claimed that Mr. Wilson then directed him to the City's permits department. There, he stated that he spoke with "a lady that was kind of running the show" about the sidewalks and was told that someone would be notified. However, Mr. Wilson testified that he did not have a conversation with Mr. Johnson in 2012 and that he only spoke with him after Ms. Mitchell's fall. Furthermore, he explained that, if he had spoken with Mr. Johnson earlier, he would have referred Mr. Johnson to the City's streets department rather than the permits department. Mr. Wilson stated that he did not keep a logbook of such interactions.

Between these two witnesses, the trial court found Mr. Wilson more credible. The court noted that "Mr. Wilson's demeanor and emotional affect while testifying were consistent with those of a person testifying truthfully." Furthermore, the court stated that "nothing about Mr. Wilson's testimony indicated any confusion with respect to dates, substance or the sequence of events." Thus, based upon the credibility of the witnesses alone, the court found by a preponderance of the evidence that Mr. Johnson did not report anything to the City about the condition of the sidewalk in front of the Church until after Ms. Mitchell's fall. "It is . . . well settled that a trial court's assessment of witness credibility is entitled to great weight on appeal because the trial court saw and heard the witness testify; thus, we defer to the trial court's assessment on credibility absent clear and convincing evidence to the contrary." *McCormick v. Warren Cnty. Bd. of Educ.*, No. M2011-02261-COA-R3-CV, 2013 WL 167764, at *5 (Tenn. Ct. App. Jan. 15, 2013) (citing *C & W Asset Acquisition, LLC v. Oggs*, 230 S.W.3d 671, 676 (Tenn. Ct. App. 2007)). Likewise, we defer to the trial court's assessment on credibility regarding the conversation that purportedly occurred in 2012. Additionally, as the trial court's order noted, Mr. Johnson's testimony concerning this purported conversation was offered to prove that the City had actual notice of the condition of the sidewalk in question. Actual notice is defined as "knowledge of facts and circumstances sufficiently pertinent in character to enable reasonably cautious and prudent persons to investigate and ascertain as to the ultimate facts." *Kirby*, 892 S.W.2d at 409 (quoting *Texas Co. v. Aycock*, 227 S.W.2d 41, 46 (Tenn. 1950) (citation omitted)). Again, actual notice is not our concern because Ms. Mitchell is not seeking an appeal of the trial court's ruling on that issue.[7]

Notwithstanding this purported conversation, Ms. Mitchell introduced five photographs from Google Street View, which were admitted to show that the condition of

---

[7] Ms. Mitchell concedes in her appellate brief, "At trial, the Plaintiff presented evidence of actual notice. However, that evidence depended on the credibility of a witness whose testimony was directly contradicted by another witness. Because this Court is to give 'great weight' to issues of credibility, the Plaintiff is not seeking an appeal of that ruling."

the sidewalk existed for several years prior to Ms. Mitchell's fall.[8]   Regarding these photographs, the trial court stated that "[w]hile the expansion joint between the two slabs is clearly visible in the photographs it is impossible to tell from the photographs whether one of the slabs is higher than the other, and if so, by how much."  Indeed, the expansion joint where Ms. Mitchell tripped is clearly visible in four of the five photographs.[9] Unfortunately, due to the timing of when the photographs were taken, a shadow cast over the sidewalk in question makes it difficult to discern whether one slab is higher than the other, and if so, by how much.  Yet, we disagree that it was *impossible* to tell whether one of the slabs was higher than the other.



This photograph, which was taken in June 2016 and is much clearer than the other photographs, depicts the area in front of the Church where Ms. Mitchell fell.  It specifically depicts the following: (1) the sidewalk's expansion joint where Ms. Mitchell tripped which is located at the center of the photograph; (2) the adjacent tree which was removed sometime after this photograph was taken; and (3) the drainpipe which is located just beneath the expansion joint.  Upon close examination of this photograph, one slab appears to be higher than the other due to the slight shift of the adjacent tree's shadow cast upon the expansion joint.  When examining this photograph, Mr. Pratt stated that the area where the two slabs meet "appears to be elevated."  The human factors engineer stated that this

---

[8] Collective Exhibit 3 consisted of two photographs taken in June 2018.  It is unclear whether these two photographs were taken before or after Ms. Mitchell's fall, which occurred on June 3, 2018.  However, upon examination of these photographs, Mr. Johnson observed that there was no offset and believed that the photographs were taken after the sidewalk had been ground down by the City, which occurred after Ms. Mitchell's fall.

[9] The first photograph in Collective Exhibit 3 is a wide-angle view taken in June 2018.  The expansion joint where Ms. Mitchell fell is visible in this photograph but not as clearly as it is in the other photographs.

photograph demonstrated that there was "significantly more shadowing effect due to the vertical change in elevation between the two concrete slabs." He clarified that he was able to tell that this was a vertical change, and not a horizontal one, by observing the ends of the two slabs which were not separating. Therefore, this evidence demonstrates that at least some change in elevation existed at the sidewalk in question since June 2016. However, from examining the photograph alone, it is still difficult to determine how much of a change in elevation was present at that point in time or if that change in elevation even exceeded a quarter-inch.

We note again that the change in elevation was not measured at any time prior to Ms. Mitchell's fall or prior to the remediation of the sidewalk by the City. However, Ms. Mitchell presented testimony about the estimated change in elevation prior to and at the time of her fall. When examining the photograph taken in October 2011, Mr. Johnson, from the Church, estimated that the change in elevation was about an inch or two. He testified that the photograph accurately depicted the conditions he observed when he started working for the Church and reported the sidewalks to the City in 2012. When examining the photograph taken in November 2017, Mr. Johnson estimated again that the change in elevation was still roughly an inch or two. He noted, however, that he never actually measured the change in elevation of the sidewalk. Mr. Pratt testified that he inspected the sidewalk in question after Ms. Mitchell's fall, along with a few other panels of sidewalk in the area, and determined that it would be ground down because the change in elevation was "no more than an inch." He could not recall if he measured the change in elevation, but he estimated the change in elevation was less than an inch. He could not say if the change in elevation was closer to a quarter-inch or an inch. However, he agreed that based on the amount of sidewalk that was ground down that the change in elevation was closer to an inch than a quarter-inch. Mr. Grubb also inspected the sidewalk in question after Ms. Mitchell's fall, but testified that he did not measure the change in elevation and did not observe anyone else measure the change in elevation. Rather, he stated that the change in elevation was just "eyeballed," and he did not believe the change in elevation was greater than an inch. He admitted that the sidewalk could have been "soff cut"[10] in order to observe what had been removed versus what was still remaining, but this was not done by the City. Mr. Tim Napier, a risk management specialist for the City, also inspected the sidewalk in question after Ms. Mitchell's fall, but he did not state whether he measured the change in elevation.

As previously stated, the human factors engineer testified that the change in elevation was greater than a quarter-inch but not greater than an inch, just based on the method of remediation performed by the City. However, he stated that his measurement, which was performed after the sidewalk had been remediated by the City, revealed that the

---

[10] The term "soff cut" used here apparently refers to the method of cutting concrete using a particular saw manufactured and sold by Soff-Cut International, Inc. *Soff-Cut Int'l, Inc. v. N.E.D. Corp.*, No. CV 03-2972-LGB (VBKx), 2004 WL 5806998, at *1 (C.D. Cal. Apr. 8, 2004).

change in elevation was approximately an inch or slightly over. According to the human factors engineer, his estimate revealed consistency with Ms. Mitchell's testimony of the change in elevation having a curled or cuffed edge, such that it would trap or capture the toe of her shoe. Additionally, he stated that his estimate was consistent with the City employee's testimony about the change in elevation being greater than a quarter-inch but not really more than an inch. He explained that if the change in elevation would have been more than an inch, the City would not have been able to grind it down; rather, the City would have had to replace the sidewalk and concrete. He added that the City never measured the change in elevation to contest the results that he achieved, even after the sidewalk was remediated. Rather, the City only submitted that the change in elevation was greater than a quarter-inch but not more than an inch based on the method of repair.

The trial court ultimately found that the measurement performed by the human factors engineer and his opinions based on that measurement were unreliable. The court thoroughly explained its rationale as follows:

> Defendant [sic] offered the testimony of David Johnson, an expert witness in the field of human factors engineering. [He] expressed his opinion that the vertical offset between the two concrete slabs was greater than one inch and was therefore a patently obvious dangerous trip hazard. [He] supported his opinion with a photograph he made of a measurement he conducted using a wooden ruler four feet in length. [He] made this measurement after the City had remediated the vertical displacement by grinding the two slabs at the expansion joint. In order to measure what the vertical displacement had been, [he] anchored one end of the wooden ruler to the concrete slab by having someone stand on it, and then measured the distance between the free end of the ruler and the top of the adjoining slab. The photograph [he] made shows the free end of the ruler resting on top of one of Ms. Mitchell's shoes, thus causing the ruler to flex upward and increasing the distance between the bottom of the ruler and the top of the adjacent slab.[11] Consequently, [his] measurement does not actually measure the distance in elevation between the two slabs when Ms. Mitchell tripped and fell. It measures the distance between the top of Ms. Mitchell's shoe and the top of the slab of which her shoe rested when the photograph was made. [His] measurement is unreliable, and his opinions based on that measurement are likewise unreliable and do not substantially assist the Court in determining any fact at issue in this case.

Regardless of the measurement and estimation provided by the human factors engineer, the City's employees testified that the change in elevation was somewhere between a quarter-inch and an inch when it was inspected after Ms. Mitchell's fall. The trial court made a

---

[11] The trial court's order referenced Exhibit 14 in a footnote.

finding that the difference in elevation between the two concrete slabs was greater than a quarter-inch but not more than one inch. This finding regarding the change of elevation at the time of Ms. Mitchell's fall was consistent with the testimony. Still, under the passage of time theory, it was unclear from the evidence at what point in time the change in elevation became greater than a quarter-inch and how long it had existed prior to Ms. Mitchell's fall.

As a separate argument under the passage of time theory, Ms. Mitchell contends that the evidence demonstrated that the tree's roots caused this condition.[12] The tree was removed at some point prior to her fall. She maintains that the condition then became static because the tree's roots were no longer growing and pushing up the sidewalk, and therefore the condition was present for a period of time without being inspected or repaired by the City. In order to address this issue, we review the evidence concerning the adjacent tree.

When examining the photograph taken in October 2011, Mr. Johnson identified that there was a tree located in the center of the photograph which appeared to be the tree the Church later had to remove. He explained that the Church removed the tree because it was dying, its roots had pushed up the sidewalk, and its limbs were falling on cars. He testified that the tree was removed sometime after 2015 or 2016, but before Ms. Mitchell fell in 2018. According to Mr. Johnson, the condition of the sidewalk adjacent to the tree was offset about an inch or two. He added that the change in elevation did not get any better over the period from 2012 to 2018 when Ms. Mitchell fell. He then examined a photograph taken in November 2017, which showed that the tree had been removed by that time. He testified that the photograph still depicted the condition of the sidewalk and that the removal of the tree did not change the sidewalk in any substantive way. He added that the condition of the sidewalk was still offset about an inch or two.

In addition to Mr. Johnson's testimony, four other witnesses at trial believed that the condition of the sidewalk was caused by the tree's roots. One witness stated that the sidewalk was obviously aged and not smooth in some spots. Based on personal experience, he thought that there were probably tree roots that had pushed up on the sidewalk, dislodged it, and made it uneven. A second witness stated, "There are a number of trees there. Many of them have grown in, and . . . that's why I think it makes [the sidewalks] unlevel a little bit." A third witness stated, "Obviously the tree root had uprooted the concrete." Mr. Pratt,

_____

[12] We note that Tennessee case law reveals it is not uncommon for tree roots to allegedly cause problems with sidewalks. *See City of Memphis v. Dush*, 288 S.W.2d 713, 714 (Tenn. 1956) (trip and fall caused by a defect in a sidewalk where tree roots had raised a block of concrete about three-and-a-half to four inches); *Harbin v. Smith*, 76 S.W.2d 107, 108 (Tenn. 1934) (trip and fall caused by a defect in a sidewalk where tree roots had elevated one of the sections of concrete about two inches); *see also McMahan*, 2019 WL 5067193, at *5 (explaining that there was no evidence that the defect in the sidewalk was caused by the growth of a tree root, and therefore the mere fact that the growth of tree roots caused defects in sidewalks in other areas of the town failed to prove the City had constructive notice of the defect in the sidewalk in question).

a City employee, stated that "there were two or three panels that had bulked up or elevated due to the tree roots . . . ." In addition to the testimony, Mr. Grubb stated in his deposition that either a tree root or the expansion and contraction of the concrete could cause such a change in elevation. The human factors engineer testified that the adjacent tree's roots probably ran beneath the drainpipe located beneath the sidewalk's expansion joint and pushed the sidewalk up. He stated, "I assumed that the tree root had grown underneath [the sidewalk] and probably loosened it or raised it." Here, the testimony of several witnesses indicated that the tree's roots potentially caused this condition.

Although Mr. Johnson testified that the tree was removed sometime in 2015 or 2016, the photographs indicate that the tree was removed sometime after June 2016 but before November 2017, if the dates on them are reliable. The photograph taken in 2016 showed that the tree was still present, while the photograph taken in November 2017 showed that the tree had been removed by that time. Based on these photographs, if the tree's roots were the cause of the condition of the sidewalk, the condition would have existed at least somewhere between seven months and two years. Although the trial court admitted said photographs into evidence, it noted in its order that no witness was able to "authenticate the reliability of the date[s]" on the photographs.

Despite the testimony regarding the tree and its removal, it was still unclear at what point in time the change in elevation became unsafe. Therefore, it was unclear if this unsafe condition existed for such a long period of time as to put the City on notice of its condition. *Fowler*, 514 S.W.3d at 739 (citing *Parker v. Holiday Hosp. Franchising, Inc.*, 446 S.W.3d 341, 352 (Tenn. 2014) (considering the "length of time" the dangerous condition existed to determine constructive notice)). We also emphasize that, other than the purported conversation in 2012, there was no evidence of any falls, complaints, reports, calls, or requests for repair regarding the sidewalk prior to Ms. Mitchell's fall. *See Parker*, 446 S.W.3d at 352 (noting that the property owner had never received any complaints regarding the allegedly defective condition in concluding that actual or constructive notice had not been proven); *Champlin v. Metro. Gov't of Nashville*, No. M2007-02158-COA-R3-CV, 2009 WL 1065937, at *3 (Tenn. Ct. App. Apr. 20, 2009) (concluding that there was no constructive notice where there were no requests for repair, complaints, or calls regarding the sidewalk where the plaintiff fell prior to her accident). Moreover, just as the trial court found, there was evidence in the record that the condition of the sidewalk might not have been caused by the adjacent tree's roots. There was some evidence that a drainpipe was located beneath the expansion joint, that part of the sidewalk had been chipped away as a result of some sort of impact, and that expansion and contraction of the concrete could cause have caused such a change in elevation.

As previously stated, Ms. Mitchell "must generally present some proof of how long the dangerous condition existed prior to the accident in question." *Traylor ex rel. Traylor*, 2014 WL 7921131, at *10 (citations omitted). Again, "constructive knowledge cannot be established without some showing of the length of time the dangerous condition had

existed." *Fowler*, 514 S.W.3d at 740 (quoting *Hardesty*, 953 S.W.2d at 682 (citing *Jones*, 600 S.W.2d at 732)). "A lack of evidence on this issue is often fatal to a claim of constructive notice." *Id.* Here, we find that Ms. Mitchell failed to show how long the condition had existed. As such, we conclude that Ms. Mitchell's argument under the passage of time theory falls short.

### b. Common Occurrence Theory

Alternatively, Ms. Mitchell contends that the significance of the tree's roots being the cause of the unsafe condition establishes not only the length of time of the condition but also the general and continuing nature of the condition. This argument is consistent with the common occurrence theory. She also argues that the trial court attempted to fit this case into the factual scenario of the *McMahan* case; however, she states that the case is easily distinguishable. Although we agree that the *McMahan* case is not completely analogous, it does bear similarities to the facts of this case.

In *McMahan*, the plaintiff attempted to prove constructive notice under both the caused or created theory and the common occurrence theory. *McMahan*, 2019 WL 5067193, at *4. Under the caused or created theory, the plaintiff contended that the defendant had constructive notice "because the roots of the trees it planted along the sidewalks in the 1990s caused some of the sidewalks in the downtown area to be raised or cracked and uneven." *Id.* However, this Court found that the plaintiff's contention was a "fallacy" because she "produced no evidence that the raised or cracked and uneven defect in the sidewalk where she tripped and fell was caused by the growth of a tree root." *Id.* Unlike *McMahan*, we reiterate that Ms. Mitchell is not making an argument under this theory.

Under the common occurrence theory, the plaintiff in *McMahan* contended that "the City had constructive notice of the defect where she tripped and fell because the defective condition occur[ed] often enough throughout the City that the City was put on constructive notice of its existence." *Id.* at *5. This Court explained that "to find constructive notice under the common occurrence theory, the plaintiff must show that the dangerous condition occurred in 'the same approximate location and in such a frequent manner, that the happening of the condition was foreseeable by the defendants.'" *Id.* (quoting *Fowler*, 514 S.W.3d at 740 (citation omitted)). We further explained that "a property owner is on constructive notice of a dangerous condition when the condition occurs regularly, placing a duty on the property owner to take reasonable steps to fix the 'commonly occurring dangerous condition.'" *Id.* (quoting *Blair*, 130 S.W.3d at 766). Therefore, "[c]ourts applying the common occurrence theory look for evidence concerning whether the dangerous condition previously occurred at the same place or near where the plaintiff was injured." *Id.* (citations omitted). The evidence demonstrated that the defendant assigned employees to conduct periodic sweeps to identify any hazards and repair those hazards promptly. *Id.* Additionally, no one had identified or observed a potential hazard in the

sidewalk where the plaintiff tripped and fell, there had been no complaints by anyone of any kind pertaining to the section of sidewalk where the plaintiff tripped and fell, and there was no evidence to establish that the dangerous condition had commonly occurred at the same place or near where she tripped and fell. *Id.*; *see Tinsley v. Wal-Mart Stores, Inc.*, 155 F. App'x 196, 198 (6th Cir. 2005); *see also Martin v. Wal-Mart Stores, Inc.*, 159 F. App'x 626, 629-30 (6th Cir. 2005). As such, we concluded that the evidence was insufficient to establish that the dangerous condition previously occurred at the same place or near where the plaintiff was injured. *Id.* at *6; *see Tinsley*, 155 F. App'x at 198; *see also Martin*, 159 F. App'x at 629-30.

Keeping the *McMahan* case in mind, we now consider whether Ms. Mitchell established constructive notice under the common occurrence theory. Our Supreme Court has explained that the theory focuses on the following principle: "a premises owner's duty to remedy a condition, not directly created by the owner, is based on that owner's actual or constructive knowledge of the existence of the condition." *Blair*, 130 S.W.3d at 766. This "recognizes the logical conclusion that, when a dangerous condition occurs regularly, the premises owner is on constructive notice of the condition's existence," which "places a duty on that owner to take reasonable steps to remedy this commonly occurring dangerous condition." *Id.* Our Supreme Court continued as follows:

> The question is whether the condition occurs *so often* that the premises owner is put on constructive notice of its existence. The condition could be caused by the owner's method of operation, by a third party, or by natural forces. A premises owner is put on constructive notice of a dangerous condition that is "a recurring incident, or a general or continuing condition" *regardless of what caused the condition, and regardless of whatever method of operation the owner employs*.

*Id.* (emphasis added). Allowing a plaintiff to prove constructive notice under this theory relieves the plaintiff "of the difficult burden of showing the duration of a particular occurrence" so long as he or she "can show that the dangerous condition was part of 'a pattern of conduct, a recurring incident, or a general or continuing condition' such that its presence was reasonably foreseeable to the premises owner." *Id.* (footnote omitted).

In the case at bar, the trial court found that the common occurrence theory had no support in the record. The court noted that Ms. Mitchell was evidently the first person ever to trip and fall at or near the sidewalk in question. Similar to the *McMahan* case, we conclude that Ms. Mitchell's argument under the common occurrence theory falls short. "[T]o find constructive notice under the common occurrence theory, the plaintiff must show that the dangerous condition occurred in 'the same approximate location and in such a frequent manner, that the happening of the condition was foreseeable by the defendants.'" *McMahan*, 2019 WL 5067193 at *5 (quoting *Fowler*, 514 S.W.3d at 740 (citation omitted)). We "look for evidence concerning whether the dangerous condition previously

- 18 -

occurred at the same place or near where the plaintiff was injured." *Id.* (citations omitted). Here, the evidence was insufficient to establish that the dangerous condition previously occurred at the same place or near where Ms. Mitchell was injured. *Id.* at *6; *see Tinsley*, 155 F. App'x at 198; *see also Martin*, 159 F. App'x at 629-30. To the contrary, there was evidence presented that several events were held in the area in the past, which resulted in thousands of people walking across the particular section of sidewalk with no issue or complaints. No witness was aware of anyone falling on the sidewalk prior to Ms. Mitchell's fall. Other than Mr. Johnson's purported conversation with Mr. Wilson in 2012, no witness was aware of any instance where someone reported the condition of the sidewalk to the City prior to Ms. Mitchell's fall. There was simply no evidence that the condition occurred "so often" that the City was put on constructive notice of its existence. *Blair*, 130 S.W.3d at 766.

This Court has held that "[i]f the plaintiff cannot or does not prove notice, [her] claim must fail." *Zamek*, 2007 WL 98481, at *5 (citations omitted). We conclude here that the evidence before this Court preponderates in favor of the trial court's finding that the City had no constructive notice of the unsafe condition of the sidewalk.[13]

## *C. Evidentiary Issues*

---

[13] We note that Ms. Mitchell also made the argument that the City had an affirmative and non-delegable duty to maintain and inspect its property. In discussing this duty, she cites to *City of Winchester v. Finchum*, 301 S.W.2d 341, 343-344 (Tenn. 1957), which predates the GTLA. In *Finchum*, our Supreme Court explained that:

> The general rule is that a city holds its public ways, not in its governmental, but in its proprietary or corporate capacity, and it owes an absolute duty to exercise reasonable care to keep its streets and sidewalks safe for use in the ordinary modes by persons exercising reasonable care. . . .
>
> This duty upon a city to use due care to maintain its streets and sidewalks is primary, nondelegable, and cannot be evaded or avoided by the city by any act of its own. It (such duty) *rests primarily, as respects the public, upon the corporation*, and the obligation to discharge this duty cannot be evaded, suspended, or cast upon others, by any act of its own.

*Id.* (internal citations and quotations marks omitted). Ms. Mitchell's reliance on *Finchum* is misplaced because it predates the GTLA. *See Kirby*, 892 S.W.2d at 409 n.6.

In *Kirby*, a GTLA case, our Supreme Court has held that when such a failure to maintain or inspect produces a defective, unsafe, or dangerous condition, liability follows only if the defendant had actual or constructive notice of the condition. *Id.* at 409. As discussed before, the *Hawks* case states that "[p]roof that a governmental entity failed to adequately inspect property or improvements which it owned and controlled is directly relevant to the question of whether it had constructive notice of the dangerous [or unsafe] or defective condition resulting in injury." *Hawks*, 960 S.W.2d at 16. However, the trial court excluded the testimony of the human factors engineer regarding the City's maintenance and inspection policies and procedures of its sidewalks. Ms. Mitchell later filed an offer of proof, albeit after this appeal was filed, which is an issue we will address next.

We now address the evidentiary issues stemming from the trial court's ruling on the City's motion in limine. Prior to trial, the City filed a motion in limine to exclude the testimony of the human factors engineer. The trial court ultimately found that the exemplar photograph depicting an allegedly similarly elevated sidewalk, the testimony of the human factors engineer based upon that photograph, and the opinion testimony of the human factors engineer regarding the City's sidewalk maintenance standards should be excluded from trial. Decisions regarding the admissibility of evidence are within the discretion of the trial court. Tenn. R. Evid. 104(a). Therefore, "[i]ssues regarding admission of evidence in Tennessee are reviewed for abuse of discretion." *Merrell*, 2014 WL 173411, at *8 (citing *Dickey v. McCord*, 63 S.W.3d 714, 723 (Tenn. Ct. App. 2001)). On this issue, this Court has held as follows:

> An appellate court will not reverse a trial court's exercise of discretion in ruling on an evidentiary motion in limine unless there is an abuse of the wide discretion given the trial court on evidentiary matters. *Pullum v. Robinette*, 174 S.W.3d 124, 137 (Tenn. Ct. App. 2004) (citing *Heath v. Memphis Radiological Prof'l Corp.*, 79 S.W.3d 550 (Tenn. Ct. App. 2002)).
>
> . . .
>
> When arriving at a determination to admit or exclude evidence, trial courts are generally "accorded a wide degree of latitude and will only be overturned on appeal where there is a showing of abuse of discretion." *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 442 (Tenn. 1993) (citing *Strickland v. City of Lawrenceburg*, 611 S.W.2d 832 (Tenn. Ct. App. 1980); Tenn. R. Evid. 401; *Austin v. City of Memphis*, 684 S.W.2d 624 (Tenn. Ct. App. 1984); *Inman v. Aluminum Co. of America*, 697 S.W.2d 350 (Tenn. Ct. App. 1985)). Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected. Tenn. R. Evid. 103.

*Brandy Hills Ests., LLC v. Reeves*, 237 S.W.3d 307, 317-18 (Tenn. Ct. App. 2006). "When reviewing a discretionary decision by the trial court, the 'appellate courts should begin with the presumption that the decision is correct and should review the evidence in the light most favorable to the decision.'" *Merrell*, 2014 WL 173411, at *8 (quoting *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999)).

### i.     *Testimony Regarding Maintenance & Inspection*

Ms. Mitchell contends that the trial court erred in excluding the testimony of the human factors engineer regarding the maintenance and inspection of the City's sidewalks. The City argues that there was no proof that any inspection would have found this exact condition because the condition of the sidewalk in question could not "be quantified in

time, or in height, to be in any specific condition." The City reiterates that there was no evidence of how long the condition existed or its exact height at any given time prior to Ms. Mitchell's fall.

We first address what we consider to be a threshold issue. That is, whether Ms. Mitchell waived this particular issue by failing to make a timely offer of proof. *See Morrison v. Allen*, 338 S.W.3d 417, 432 (Tenn. 2011) (determining that whether the defendants waived any entitlement to relief by failing to make a timely offer of proof during the course of trial was a threshold issue). Tennessee Rule of Evidence 103 provides in part:

> **(a) Effect of Erroneous Ruling.** Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
>
> . . .
>
> (2) *Offer of Proof.* In case the ruling is one excluding evidence, the substance of the evidence and the specific evidentiary basis supporting admission were made known to the court by offer or were apparent from the context.
>
> Once the court makes a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal.

Tenn. R. Evid. 103(a). Pursuant to this rule, "[w]e will not reverse a trial court's ruling excluding evidence if the appellant fails to make an offer of proof regarding the substance of the evidence and the supporting evidentiary basis to support its admission." *Rose v. Cookeville Reg'l Med. Ctr. Auth.*, No. 2010-01438-COA-R3-CV, 2011 WL 251210, at *2 (Tenn. Ct. App. Jan. 13, 2011) (citing *Dickey*, 63 S.W.3d at 723; *Anderson v. American Limestone, Co.*, 168 S.W.3d 757, 762 (Tenn. Ct. App. 2005)).

Here, Ms. Mitchell attempted to revisit the issue of the City's maintenance and inspection policies and procedures at trial. After the City objected to the line of questioning, Ms. Mitchell attempted to make an offer of proof of the testimony of the human factors engineer. The trial court indicated that an offer of proof could be made outside the court's presence. Counsel for Ms. Mitchell suggested making the offer of proof via affidavit, "as opposed to just sitting here tonight and having that while Your Honor is off the bench, obviously it doesn't need to be submitted right now." The court agreed that this was acceptable and indicated that the City could present whatever its cross-examination would be. After filing her appeal, Ms. Mitchell filed a notice of filing of the affidavit of the human factors engineer as an offer of proof. The affidavit detailed the offered proof of the human factors engineer concerning the City's maintenance and

- 21 -

inspection policies and procedures of its sidewalks. The City filed a motion to quash the notice of filing arguing that the affidavit was not proffered at trial, was new evidence, and must be excluded. The trial court entered an order denying the motion to quash. The notice of filing and the affidavit were included in the record as a "late filed" Appellate Exhibit B.

When excluded evidence consists of oral testimony, "it is essential that a proper offer of proof be made in order that the appellate court can determine whether or not exclusion was reversible." *State v. Goad*, 707 S.W.2d 846, 852 (Tenn. 1986). We have noted that "[t]here are several methods by which a party can make an offer of proof." *Hill v. Hill*, No. M2006-01792-COA-R3-CV, 2008 WL 110101, at *7 (Tenn. Ct. App. Jan. 9, 2008). While questioning the witness is a preferred method, a party can make an offer of proof "in the form of a summary statement by counsel of the excluded testimony." *Id.* (citing *Thompson v. City of LaVergne*, No. M2003-02924-COA-R3-CV, 2005 WL 3076887, at *9 (Tenn. Ct. App. Nov. 16, 2005) (citing Neil P. Cohen, et al., *Tennessee Law of Evidence* § 103.4, at 20 (3d ed. 1995))). "Other accepted methods include stipulating to the content of the excluded evidence or presenting a written summary of the excluded evidence." *Id.* (citing *Thompson*, 2005 WL 3076887, at *9). Whatever method is used to make an offer of proof, "a party merely needs to provide 'the substance of the evidence and the specific evidentiary basis supporting the admission of the evidence.'" *Id.* (quoting *Thompson*, 2005 WL 3076887, at *9 (citing Tenn. R. Evid. 103(a)(2)).

Here, Ms. Mitchell utilized an unusual method to make her offer of proof by filing an affidavit of the human factors engineer after trial. "[O]ur Supreme Court has suggested that question and answer offers of excluded testimony are 'the better practice.'" *Alley v. State*, 882 S.W.2d 810, 817 (Tenn. Crim. App. 1994) (quoting *Farmers-Peoples Bank v. Clemmer*, 519 S.W.2d 801, 804 (Tenn. 1975)). Indeed, given the complications that this offer of proof has created, we resound that the better practice is to present, during the trial, the actual testimony in question and answer form. *See Morrison*, 338 S.W.3d at 432 ("[T]he better practice would have been for the Defendants to have made an offer of proof *during the trial . . . .*") (emphasis added); *Clemmer*, 519 S.W.2d at 804 ("[T]he better practice is to present the proof so that if, on appeal, the ruling of the trial judge is reversed on the legal question presented, the possibility of a second appeal, following the remand, will be avoided."); *see also Tarkington v. Tarkington*, No. 01A01-9706-CV-00270, 1998 WL 44951, at *3 (Tenn. Ct. App. Feb. 6, 1998) ("An offer of proof by narration of its substance by counsel may be sufficient, but better practice is to present the actual evidence so that the affect [sic] of the alleged error may be corrected on appeal.") (citing *Clemmer*, 519 S.W.2d at 804). Nevertheless, "the rules and cases do not limit offers to a particular method, . . . ." *Alley*, 882 S.W.2d at 817.

This situation bears resemblance to the *Morrison* case, in which our Supreme Court agreed the trial court had directed the defendants to present their proof after the trial had ended. *Morrison*, 338 S.W.3d at 432-33. Following the direction of the trial court, counsel for the defendant did not make an offer of proof at trial and was assured that there would

be an opportunity to do so after trial. *Id.* at 432. After the court entered an order of final judgment, the defendants filed a motion to alter or amend and reopen the proof but the court denied the motion noting that the defendants had the opportunity to make an offer of proof during the trial. *Id.* Under the circumstances of that case, our Supreme Court concluded the issue had not been waived and that the trial court should have considered the offer of proof at issue. *Id.* at 433.

In the case at bar, it appears the trial court directed counsel for Ms. Mitchell, or at the very least permitted him, to file the affidavit of the human factors engineer after the trial had ended. The court stated, "If you do that, then obviously [counsel for the City] has the opportunity to supplement that with his offer of what the cross-examination would be." After approximately three weeks had passed, the court entered its order and Ms. Mitchell had not yet filed the affidavit as an offer of proof. Approximately three weeks later, Ms. Mitchell filed her appeal with this Court; still, she had not filed the affidavit as an offer of proof. She did not file the affidavit as an offer of proof until several days after she filed her appeal with this Court. The appellate record had not yet been received by this Court, and thus the affidavit was included in the appellate record. We note that the affidavit shows on its face that it was not even prepared until after the final order was entered.

The City has presented some argument in its appellate brief suggesting that the offer of proof is "new evidence," but it did not present this as a specific issue for review on appeal. *See Hodge v. Craig*, 382 S.W.3d 325, 334 (Tenn. 2012) ("Appellate review is generally limited to the issues that have been presented for review.") (citing Tenn. R. App. P. 13(b); *State v. Bledsoe*, 226 S.W.3d 349, 353 (Tenn. 2007)). We have also considered the question of whether the trial court properly exercised jurisdiction since the offer of proof was filed after the appeal was perfected.[14] However, it is not obvious to this Court that the trial court did not retain jurisdiction over this matter and neither party has addressed this issue.[15] Additionally, while the *Morrison* case provides some guidance as to the

---

[14] "Perfecting an appeal consists of filing a timely notice of appeal and either an appeal bond or affidavit of indigency." *First Am. Trust Co. v. Franklin-Murray Dev. Co.*, 59 S.W.3d 135, 141 n.7 (Tenn. Ct. App. 2001) (citing *Blue Cross-Blue Shield of Tenn. v. Eddins*, 516 S.W.2d 76, 77 (Tenn. 1974) (holding that an appeal is perfected when the appeal bond is filed)).

[15] "[O]nce a party perfects an appeal from a trial court's final judgment, the trial court effectively loses its authority to act in the case without leave of the appellate court—perfecting an appeal vests jurisdiction over the case in the appropriate appellate court." *Malmquist v. Malmquist*, 415 S.W.3d 826, 837 (Tenn. Ct. App. 2011) (citations omitted). However, we note that a trial court retains jurisdiction to rule on certain *timely* motions, such as those provided for in Tennessee Rules of Civil Procedure 50.02, 52.02, 59.04, and 59.07 for civil actions, even if the appeal is filed prior to the filing of the motion or the trial court's ruling on the motion. Tenn. R. App. P. 4(e); *see Wells Fargo Bank, N.A. v. Dorris*, 556 S.W.3d 745, 752 (Tenn. Ct. App. 2017).

We also note that there are other exceptions where the trial court is permitted to consider matters after the appeal is filed. For example, "[t]he filing of a notice of appeal does not prevent the trial court from ruling on ancillary matters relating to the enforcement or collection of its judgment." *Born Again Church & Christian Outreach Ministries, Inc. v. Myler Church Bldg. Sys. of the Midsouth, Inc.*, 266 S.W.3d 421,

timeliness of an offer of proof, it does not state at what point an offer of proof would be considered untimely. *See Morrison*, 338 S.W.3d at 432-33.

As such, we conclude that Ms. Mitchell has not waived this issue by failing to file a timely offer of proof, but we caution against this practice in future cases. We therefore review the offer of proof, which has been included in the appellate record, and consider whether the trial court abused its discretion by excluding the testimony of human factors engineer regarding the maintenance and inspection of the City's sidewalks. *See Merrell*, 2014 WL 173411, at *8 ("Issues regarding admission of evidence in Tennessee are reviewed for abuse of discretion.") (citing *Dickey*, 63 S.W.3d at 723).

In his affidavit filed as the offer of proof, the human factors engineer stated, in pertinent part, the following:

> 22. Incorporating a periodic inspection program that inspects all sidewalks at least yearly and busier sidewalks on a more frequent basis is crucial to sidewalk maintenance and safety.
> 23. The City . . . appears to do at least some inspection of its sidewalks except when the sidewalk adjoins a state route, as the sidewalk in this case does.
> 24. The entire sidewalk along the state route that is within the City . . . is only approximately two miles – See Appendix A to my report.
> 25. An inspection of the entire sidewalk could be performed in probably less than an hour and could be performed by in-house staff with basic training on walkway safety.
> 26. The City['s] . . . "complaint-driven" policy is unreasonable and problematic.
> 27. Primarily, the "complaint-driven" policy places the obligation to inspect sidewalks onto individuals who are neither aware of the program nor are trained or knowledgeable about what constitutes an unsafe or unreasonably dangerous sidewalk.
> 28. It also appears that the City . . . does not maintain records of sidewalk complaints, inspections, or maintenance, which makes it difficult to evaluate whether sidewalk maintenance and inspections are being performed.
> 29. According to the American Public Works Association, most municipalities proactively inspect their entire sidewalk system or portions of the sidewalk system, called a "zone inspection," on a yearly basis.

---

425 n.3 (Tenn. Ct. App. 2007); *see First Am. Trust Co.*, 59 S.W.3d at 141 n.8. Furthermore, the filing of the appeal does not prevent a trial court from ruling on issues involving the statement of the evidence because "the trial court is the arbiter of the statement of the evidence for its proceedings." *Brown v. Brown*, No. M2012-02084-COA-R3-CV, 2014 WL 1017509, at *7 (Tenn. Ct. App. Mar. 13, 2014) (citing Tenn. R. App. P. 24(f)).

30. The City['s] . . . "complaint-driven" policy allows dangerous conditions to develop and continue to exist for years before the problems are corrected. This places the public at risk because the triggering of a complaint is often after someone actually is injured from the unsafe condition.

31. The Federal Highway Administration also recommends using zone inspection as part of a municipality's sidewalk maintenance program. These inspection programs include, but are not limited to, a spot inspection program. A spot inspection program responds to complaints of sidewalk conditions but is not a replacement for a proactive sidewalk inspection and maintenance program.

32. There was no reason for the City . . . to fail to performed [sic] some type of periodic inspection of the sidewalk involved in this incident.

33. The condition which resulted in Ms. Mitchell's fall and injury existed in a dangerous condition for at least five to six years prior to this incident. Had the City . . . of Franklin performed any periodic inspection of the sidewalk during that time, it would have discovered the condition and been able to repair it prior to Ms. Mitchell being injured.

As previously noted, proof of the City's failure to inspect is relevant to the question of whether the City had constructive notice. Despite the City's immunity under the failure to inspect exception of section 29-20-205(4), "[p]roof that a governmental entity failed to adequately inspect property or improvements which it owned and controlled is directly relevant to the question of whether it had constructive notice of the dangerous [or unsafe] or defective condition resulting in injury." *Hawks*, 960 S.W.2d at 16. Since Ms. Mitchell is seeking recovery from the City which owns and controls the sidewalk in question pursuant to section 29-20-203, section 29-20-205(4) does not provide immunity from suit arising from "any injury caused by a defective, unsafe, or dangerous condition" of that sidewalk if either actual or constructive notice is "alleged and proved." Tenn. Code Ann. § 29-20-203; *see Hawks*, 960 S.W.2d at 16 (applying the same rationale to demonstrate that section 29-20-205(4) does not provide immunity from suit arising from allegations pursuant to section 29-20-204). The City's immunity may still be removed under section 29-20-203 even though it retained immunity under section 29-20-205, and removal of the City's immunity may be achieved by proving constructive notice with proof of the City's failure to inspect its sidewalks.

In light of the *Hawks* case, we find that the testimony of the human factors engineer regarding the maintenance and inspection of the City's sidewalks was relevant to the question of whether the City had constructive notice pursuant to section 29-20-203. The trial court found that the testimony of the human factors engineer was "not relevant" because "the exceptions to removal of [the City's] governmental immunity in negligence actions codified at Tenn. Code Ann. § 29-20-205(1) and (4) apply to preserve [the City's] immunity[.]" This was an abuse of discretion because the court misapplied the law. *See Gooding v. Gooding*, 477 S.W.3d 774, 779-80 (Tenn. Ct. App. 2015) ("If the trial court

misconstrues or misapplies the law, its discretion lacks the necessary legal foundation and becomes an abuse of discretion.") (citations omitted). The *Hawks* case clearly states that this proof is indeed relevant.

It is difficult to ascertain what the substance of the actual testimony would have been in this case. The record contains only an affidavit by the human factors engineer and no proffered cross-examination. As such, we cannot discern whether the excluded testimony of the human factors engineer would have provided proof of constructive notice.

Therefore, we vacate and remand for the trial court to consider the testimony of the human factors engineer concerning the maintenance and inspection of the City's sidewalks. Given that we have already concluded that Ms. Mitchell failed to prove constructive notice with the evidence before us, we remand with the limited instruction to consider the testimony of the human factors engineer as it pertains to the City's maintenance and inspection of its sidewalks.

### ii. *Exemplar Photograph*

Ms. Mitchell also contends that the trial court erred in excluding an exemplar photograph which depicted the same conditions located in another section of the same sidewalk to demonstrate what the condition looked like before it was removed by the City. In regard to the exemplar photograph, we conclude that the trial court did not abuse its discretion. "In general, questions regarding the admissibility, qualifications, relevancy and competency of expert testimony are left to the discretion of the trial court." *Spearman v. Shelby Cnty. Bd. of Educ.*, 637 S.W.3d 719, 739 (Tenn. Ct. App. 2021) (quoting *McDaniel v. CSX Transp., Inc.*, 955 S.W.2d 257, 264 (Tenn. 1997) (citation omitted)). Courts are not required to rigidly apply the factors found in Tennessee Rules of Evidence 702 and 703. *Id.*; *see Payne v. CSX Transp., Inc.*, 467 S.W.3d 413, 455 (Tenn. 2015); *Excel Polymers, LLC v. Broyles*, 302 S.W.3d 268, 272-73 (Tenn. 2009). "Instead, the two most important consideration are whether the testimony is reliable and whether it will substantially assist the trier of fact." *Id.* (citing *Payne*, 467 S.W.3d at 455).

When ruling on the motion in limine, the trial court found that the testimony of the human factors engineer offered in reliance upon the photograph of an allegedly similar sidewalk would not meet the standards of Tennessee Rule of Evidence 703. Furthermore, the court found that this particular portion of his testimony was based upon assumptions which had no foundation in the record. At trial, counsel for Ms. Mitchell attempted again to get the photograph into evidence and stated that the photograph was being used to show a similar condition of the sidewalk that caused Ms. Mitchell's fall. Ms. Mitchell testified that the photograph accurately depicted a condition similar to the one that caused her fall. However, Ms. Mitchell admitted that she could not say specifically what the differential was between the changes of elevation of the sidewalk in question and the one depicted in the exemplar photograph. The court concluded that Ms. Mitchell did not have the

opportunity to observe the trip hazard after she fell because she was injured. She also did not have the opportunity to observe the trip hazard before it was remediated by the City just a few days later. Therefore, the court again found that the photograph should not be admitted because it was not supported by the evidence. Ms. Mitchell submitted the photograph as an offer of proof, which was received as Appellate Exhibit A during the course of trial.[16]

We note again that "trial courts are generally 'accorded a wide degree of latitude and will only be overturned on appeal where there is a showing of abuse of discretion.'" *Reeves*, 237 S.W.3d at 318 (quoting *Otis*, 850 S.W.2d at 442 (citations omitted)). "Acting as the 'gatekeeper' of evidence," we conclude that the trial court did not abuse its discretion here. *Spearman*, 637 S.W.3d at 740 (quoting *Payne*, 467 S.W.3d at 455 (citations omitted)).

### D. The Opinion Testimony of the Human Factors Engineer

As a final matter, we address Ms. Mitchell's contention that the trial court erred in finding that the human factors engineer was "Defendant's" expert witness who expressed an opinion that the condition of the sidewalk was a "patently obvious dangerous trip hazard." The trial court's statement that the human factors engineer was "Defendant's" expert witness was obviously error because he was Ms. Mitchell's expert witness. However, the court went on to state that the measurement of the sidewalk performed by the human factors engineer was unreliable, and his opinions based on that measurement were likewise unreliable and did not substantially assist the court in determining a fact at issue in the case. Therefore, the court did not rely on this opinion expressed by the human factors engineer. The court was simply noting that the human factors engineer stated the condition of the sidewalk was obvious to someone like him.[17]

The trial court found that the human factors engineer was "Defendant's" expert witness who expressed an opinion that the condition of the sidewalk was a "patently obvious dangerous trip hazard." Regardless of whether this was an error, the court did not rely on this opinion expressed by the human factors engineer. As such, similar to the previous issue, we conclude that if the trial court erred here, it was harmless. *See Siler v. Scott*, 591 S.W.3d 84, 113 (Tenn. Ct. App. 2019) (holding that "even if we were to find error, . . . '[t]he erroneous exclusion of evidence will not require reversal of the judgment if the evidence would not have affected the outcome of the trial even if it had been admitted.'") (quoting *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App.

---

[16] At trial, the judge stated, "It will be received as Appellate Exhibit A. In that capacity it will be included in the technical record."

[17] To be clear, the human factors engineer testified that the condition of the sidewalk would be obvious to someone like him who was looking for the specific condition, but it would not be obvious to a pedestrian like Ms. Mitchell. It was "subtle enough not to be noticeable but substantial enough to be a trip hazard."

1999)).

## V. CONCLUSION

For the aforementioned reasons, we affirm in part, vacate in part, and remand for further proceedings consistent with this opinion. Costs of this appeal are taxed one-half to the appellant, Ruth Mitchell, and one-half to the appellee, City of Franklin, Tennessee, for which execution may issue if necessary.

_____
CARMA DENNIS MCGEE, JUDGE